[No. 39463-4-II.   Division Two.   October 20, 2010.]

JOHN E. COOK, *Respondent*, v. A. DIANE BRATENG ET AL., *Appellants*.

*James D. McBride II* (of *Julin & McBride PS)*, for appellant.

*David A. Nelson* (of *Nelson Law Firm PLLC*), for respondent.

¶1 BRIDGEWATER, J. — A. Diane Brateng appeals the trial court's division of Elmer Cook's trust property. We hold that

Diane,[1] who was both a beneficiary and trustee of Elmer's trust, did not breach her fiduciary duties when she (1) did not inform John Cook, her brother and also a beneficiary of Elmer's trust, that she decided to claim and defer charges against Elmer's estate for providing Elmer's care; and (2) decided not to encumber Elmer's house to pay for his care. We reverse the trial court's finding that Diane breached her fiduciary duties, hold that she is entitled to reasonable compensation for providing Elmer's care, and remand to determine her compensation and to redistribute the property. We hold that Diane is entitled to funds she spent to repair and remodel a portion of Elmer's home, and we do not disturb the trial court's use of a 2007 appraisal it used to determine the value of Elmer's home. Finally, we vacate John's award of attorney fees below and remand to set Diane's reasonable attorney fees for both the trial and the appeal.

## FACTS

¶2 The following facts are undisputed. Diane and John are siblings. In November 1995, their father, Elmer, executed a living trust, naming himself and Diane as trustees. Elmer's health deteriorated; two years later, in November 1997, he was declared incompetent, and Diane became sole trustee of his trust.

¶3 With Elmer declared incompetent, the trust required Diane, the sole remaining trustee, to apply all trust property exclusively for Elmer's benefit. Specifically, the trust required Diane to "provide as much of the principal and net income of [the] trust as is necessary or advisable, in [Diane's] sole and absolute discretion, for my health, support, maintenance, and general welfare." Clerk's Papers (CP) at 36. The trust also required Diane to make information available to the beneficiaries:

> My trustee shall report, at least semiannually, to the beneficiaries then eligible to receive mandatory or discretionary

---

[1] We use first names to avoid confusion and mean no disrespect.

distributions of the net income from the various trusts created in this agreement all of the receipts, disbursements, and distributions occurring during the reporting period along with a complete statement of the trust property.

CP at 60. Upon Elmer's death, the trust directed Diane, as the trustee, to divide all remaining trust property among herself, John, the Salvation Army, and the Finnish Assembly of God Church. The trust allocated to each Diane and John a 9/20th share and to each charity a 1/20th share.[2] The trust also directed Diane to distribute the home to herself, "AS PART OF, AND NOT IN ADDITION TO, that share of [the] trust distributed to [Diane]." CP at 46.

¶4 In November 1997, after Elmer was declared incompetent, Diane decided to move Elmer from his home in Ilwaco, Washington, into her home in Kirkland, Washington, where she could more easily care for him. Elmer died in January 2000.

¶5 During the time Diane cared for Elmer from November 1997 to January 2000, she used $59,176.67[3] from the trust's liquid funds to pay for Elmer's medical expenses and personal expenses, as well as maintaining, repairing, and remodeling the Ilwaco home. Diane spent $20,319.75 of the trust funds to repair water damage to the Ilwaco home and to remodel its kitchen. At the time of Elmer's death, the trust had $16,439.62 in liquid funds remaining. The only other remaining trust asset was Elmer's Ilwaco home.

¶6 Diane kept meticulous records of her time and expenses related to caring for Elmer and her time and expenses related to driving from Kirkland to Ilwaco. She carefully recorded her time spent caring for him from 1996

---

[2] The charities both settled with Elmer's estate and are not part of this litigation.

[3] We note that the record contains two different values for the trust's liquid funds that Diane spent. We choose to use the value of $59,176.67 found in the findings of fact (CP at 181) versus the value of $59,176.97 found in the defendant's trial brief (CP at 127).

to 1997[4]—before she moved him to Kirkland—and she recorded her time spent caring for him while he lived with her in Kirkland as "24 hour In-home Care." Ex. 26. She also kept track of the fuel used to drive to Ilwaco, her meals along the way, and the cost per mile. Finally, she recorded bills that she personally paid for Elmer, recording the exact amount and method of payment. Diane's claim against the estate for acting as Elmer's caregiver totaled $142,171.10.

¶7 Although Diane kept these meticulous records, she did not disclose her intention to claim reimbursement to John until he filed suit and requested an accounting. Before Elmer's death, Diane never discussed with John her expenses as a caregiver, the value of her services as a caregiver, or her decision not to encumber Elmer's Ilwaco house to pay for his care.

¶8 John filed suit against Diane in October 2001, which led to mediation and arbitration under the "Trust and Estate Dispute Resolution Act."[5] John appealed the arbitrator's decision and requested a trial de novo. The trial court issued a memorandum opinion on June 20, 2008, followed by findings of fact and conclusions of law on May 26, 2009.

¶9 The trial court concluded that Diane, as trustee of her father's estate, had a duty to inform John that (1) she decided to claim and defer charges against Elmer's estate for providing Elmer's care and (2) she decided not to encumber Elmer's Ilwaco house to pay for Elmer's care. The court further concluded that she breached her fiduciary duties and, thus, could not compensate herself for providing Elmer's care. The trial court awarded the Ilwaco house to Diane but gave John a 9/20th interest in its 2007 appraised value. The court also awarded Diane a credit for one-half the value of a property adjacent to the Ilwaco house that is

---

[4] She kept track of her time spent shopping, cooking, cleaning, cutting hair, and picking up mail.

[5] Ch. 11.96A RCW.

not part of this appeal.[6] Finally, the court awarded John all of his requested fees, totaling $24,425.00, and awarded Diane one-half of her requested fees, or $12,358.17. The net result of the trial court's decision resulted in a $20,716.83 lien in favor of John.

## ANALYSIS

### I. DUTY TO INFORM

¶10 Diane argues that she did not have a duty to inform John that she was claiming and deferring her charges for providing Elmer's care until his death because neither the trust nor the applicable statutes required her to provide her brother with accounting statements. She also argues, for the same reason, that she did not have a duty to inform John that she decided to refrain from encumbering the Ilwaco house to pay for Elmer's health costs. We agree.

¶11 A trustee, as a fiduciary, owes beneficiaries the "highest degree of good faith, care, loyalty and integrity." *Esmieu v. Schrag*, 88 Wn.2d 490, 498, 563 P.2d 203 (1977). "It is the duty of a trustee to administer the trust in the interest of the beneficiaries." *Tucker v. Brown*, 20 Wn.2d 740, 768, 150 P.2d 604 (1944). A trustee's duties and powers are determined by the terms of the trust, by common law, and by statute. *In re Estate of Ehlers*, 80 Wn. App. 751, 757, 911 P.2d 1017 (1996). At common law, Washington courts have defined a trustee's duty of care, skill and diligence to be that degree of care, skill and diligence that an ordinary prudent man exercises in similar affairs. *In re Nontestamentary Trust of Parks*, 39 Wn.2d 763, 767, 238 P.2d 1205 (1951); *Monroe v. Winn*, 16 Wn.2d 497, 508, 133 P.2d 952 (1943).

¶12 Diane first contends that the trust did not require her to provide John with an accounting during

---

[6] Diane and John's uncle left this house to them as tenants in common. Diane does not challenge the trial court's partition on appeal.

Elmer's life. Without any analysis, she cites the following language of the trust to support her contention:

> My Trustee shall report, at least semiannually, to the beneficiaries *then eligible to receive mandatory or discretionary distributions* of the net income from the various trusts created in this agreement all of the receipts, disbursements, and distributions occurring during the reporting period along with a complete statement of the trust property.

CP at 60 (emphasis added); Br. of Appellant at 14. The crux of her argument is that the trust language does not require Diane to provide John with an accounting because he was not "eligible" as a remainder beneficiary to receive distributions. CP at 60.

¶13 We ascertain a settlor's intent and purpose from the four corners of the trust instrument, construing all of its provisions together. *Templeton v. Peoples Nat'l Bank of Wash.*, 106 Wn.2d 304, 309, 722 P.2d 63 (1986). Here, Diane had sole and absolute discretion to use the trust assets to provide for Elmer if he was incapacitated, as article four, section 3 of the trust stated:

> My Trustee shall provide as much of the principal and net income of my trust as is necessary or advisable, in its sole and absolute discretion, for my health, support, maintenance, and general welfare.

CP at 36. Only the trust property not distributed to Elmer during his lifetime was to be divided between Diane and John as beneficiaries. Neither Diane nor John was eligible to receive their distributions during Elmer's lifetime, as the clear intent of the trust instrument was to provide for his needs. Therefore, any mandatory accounting was primarily intended to benefit Elmer, as the sole income beneficiary; we agree with Diane that the trust did not *require* her to report receipts, disbursements, and distributions to John while Elmer was still living. The trust required Diane to provide Elmer, as the sole income beneficiary, with an accounting only upon distribution. John does not argue that Diane failed to report to Elmer.

¶14 Diane also correctly notes that the law did not *require* her to provide John with an accounting. Under RCW 11.106.020, a trustee must provide at least an annual accounting to "each adult income trust beneficiary . . . of all current receipts and disbursements." In contrast, any beneficiary, including one holding only a present interest in the remainder of a trust, may petition the court for an accounting. RCW 11.106.040; *see Nelsen v. Griffiths*, 21 Wn. App. 489, 493, 585 P.2d 840 (1978). Lastly, a trustee has a common law duty to give a beneficiary, upon his reasonable request, complete and accurate information about the nature and amount of trust property. *Tucker*, 20 Wn.2d at 769. Here, because John was not an income beneficiary, RCW 11.106.020 did not compel Diane to provide him with an accounting. Because John never petitioned the court for an accounting, RCW 11.106.040 did not compel Diane to provide an accounting. And, finally, because John never requested an accounting from Diane, she did not have a common law duty to provide him with such accounting.

¶15 But determining that Diane was not required to provide an accounting is not dispositive of John's issues because a mandatory accounting would not have disclosed Diane's decision to defer charges and to refrain from encumbering the Ilwaco house during her father's lifetime. Here, any accounting would have revealed only those receipts and disbursements actually made. RCW 11.106.020. The plain language definition of these terms suggests that a trustee need provide an accounting only for transactions actually paid from the trust. Future contemplated transactions that have not yet occurred would not be shown on an accounting. Thus, because mandatory accounting would not have disclosed Diane's decisions to defer payment for her services rendered on her father's behalf, we turn to the more general question of whether Diane had a duty to inform John of how she was managing the costs associated with Elmer's care.

¶16 A trustee's duty "includes the responsibility to inform the beneficiaries fully of all facts which would aid

them in protecting their interests." *Allard v. Pac. Nat'l Bank*, 99 Wn.2d 394, 404, 663 P.2d 104 (1983) (citing *Esmieu*, 88 Wn.2d at 498). "That the settlor has created a trust and thus required the beneficiaries to enjoy their property interests indirectly does not imply the beneficiaries are to be kept in ignorance of the trust, the nature of the trust property, and the details of its administration." *Allard*, 99 Wn.2d at 404. A trustee's duty includes the responsibility to inform the beneficiaries periodically of the status of the trust, its property, and how the property is being managed. *Allard*, 99 Wn.2d at 404. "If the beneficiaries are able to hold the trustee to proper standards of care and honesty and procure the benefits to which they are entitled, they must know of what the trust property consists and how it is being managed." *Allard*, 99 Wn.2d at 404.

¶17 *Allard* holds that a trustee has a duty to inform beneficiaries about management of the trust that significantly affects their interest or, put differently, that a trustee breaches its duty to inform when it withholds information that would prejudice the beneficiaries. *Allard*, 99 Wn.2d at 404-05. In *Allard*, Pacific Bank held in trust for certain beneficiaries a quarter block of property in downtown Seattle. *Allard*, 99 Wn.2d at 396. The property was the sole trust asset. *Allard*, 99 Wn.2d at 396. Under the trust provisions, Pacific Bank had full power to manage trust assets according to the judgment and care that " 'prudent men exercise in the management of their own affairs.' " *Allard*, 99 Wn.2d at 396. In 1978, Pacific Bank sold the downtown property before informing the beneficiaries of the sale more than a month later. *Allard*, 99 Wn.2d at 397.

¶18 The beneficiaries brought suit against Pacific Bank for breach of its fiduciary duties, arguing on appeal that Pacific Bank had a duty to inform them before selling the property. *Allard*, 99 Wn.2d at 401. Our Supreme Court agreed with the beneficiaries and held that Pacific Bank had a duty to inform them of the sale. *Allard*, 99 Wn.2d at 405. The court reasoned that, although Pacific Bank could manage trust assets without seeking the beneficiaries'

consent, and although the trust provisions required Pacific Bank to furnish only an annual statement for the prior year's investments, Pacific Bank, as part of its fiduciary duties, had to inform the beneficiaries of all material facts of the downtown Seattle property transaction before the sale because such a sale was a nonroutine transaction that significantly affected the trust estate and the beneficiaries' interests. *Allard*, 99 Wn.2d at 403-05; *cf. In re Estate of Ehlers*, 80 Wn. App. 751, 758-59, 911 P.2d 1017 (1996) (holding that a trustee does not breach her duty of care in failing to provide timely mandatory accounting when the trustee eventually provides accounting and the untimeliness does not cause any loss to any beneficiary).

¶19 Here, Diane had a duty to inform John about matters that would significantly affect his interests. But unlike in *Allard*, in which selling the only trust asset significantly affected the beneficiaries' interest, providing Elmer's care was a routine practice to fulfill the trust's primary purpose, which, therefore, did not significantly affect John's remainder interest. In fact, the trust specifically gave Diane authority to "provide as much of the principal and net income of my trust as is necessary or advisable, in [her] sole and absolute discretion, for my health, support, maintenance, and general welfare." CP at 36. John could also reasonably expect that his ailing father, declared incompetent by two physicians and aged 95 at the time of his death, would require full-time care, which care could consume substantial portions, if not all, of the trust's assets.

¶20 Because the trust clearly provided for Diane to spend any amount of trust assets to care for Elmer, John suffered no loss whether Diane planned to defer the costs and compensate herself in the future or hire a caregiver who she paid during Elmer's lifetime; he could reasonably expect those types of expenses on behalf of his incompetent and dependent father and he knew that the trust provided that Diane could pay for those expenses in her sole discretion. We hold that Diane had a duty to inform John about significant matters that affected his beneficial interest in

the estate assets but that she did not breach her fiduciary duty in failing to inform John about how she was managing the routine expenses associated with Elmer's care, as John was not prejudiced by her conduct. Nor did Diane breach her duty to inform John of her management of the Ilwaco property when, without telling John, she decided not to encumber the Ilwaco house for the cost of their father's care.

¶21 The trust divided the remaining estate assets equally to Diane and John in 9/20th shares, with the Ilwaco home left to Diane *"as part of, and not in addition to"* her 9/20th share.[7] CP at 46 (emphasis added) (capitalization omitted). If the value of the house exceeded Diane's 9/20th share of the remaining estate, Diane had the option of purchasing the house for any amount of value exceeding her 9/20th share of the entire estate, in effect giving John cash payment for his interest in the estate. If Diane declined to purchase the house, the property would pass as if Elmer had died intestate.

¶22 It is inconsequential whether Diane took the money from the trust during her father's lifetime and encumbered the house at that time to pay herself or whether she deferred her claim for reimbursement and refrained from encumbering the house. Diane and John each had a remainder interest in the estate. If Elmer's needs during his lifetime exceeded the trust's liquid funds, Diane would necessarily have had to encumber the Ilwaco home to pay his additional expenses. If the liquid trust funds were depleted, John and Diane would be entitled to a 9/20th share of the remainder of their father's estate, here, the Ilwaco house, and Diane could purchase the house and pay John his 9/20th interest. Thus, depleting the trust's liquid funds during her father's lifetime or delaying her payment until after his death did not change the fact that, with those funds depleted, Diane would have only the option to purchase the house.

---

[7] The parties acknowledged during oral argument that the Ilwaco home had been transferred to the trust by deed.

¶23 Further indication that John did not suffer any prejudice is that he failed to object to Diane's decisions at any point before Elmer's death, even though he had reason to know that she was maintaining the Ilwaco home, that she was Elmer's caregiver, and that she would charge the estate for her caregiving. John lived on property adjoining Elmer's Ilwaco home and saw Elmer visit when Diane took him there. Diane also generally maintained the Ilwaco home and undertook repairs for water damage.

¶24 John also was on inquiry notice that Diane would charge the estate for caring for Elmer, as she had absolute authority to pay for his "health, support, maintenance, and general welfare." CP at 36. The trust had paid a nurse to care for Elmer before Diane took him into her home and care. When Diane started caring for him, it was certainly foreseeable that she would reasonably charge for the personal services she rendered. But John never took care of his father and never inquired about whether Diane was going to charge the estate for her care. John's failure to object, even though he had reason to know that Diane was caring for Elmer and that she would reasonably charge the estate for her services, belies his assertion now that he suffered harm as a result of her decisions.

¶25 We hold that Diane did not have a duty to inform John that she decided to claim and defer charges against Elmer's estate. Nor did she owe him a duty to inform him that she decided to refrain from encumbering the Ilwaco home to pay for Elmer's care.

## II. CAREGIVING COMPENSATION

¶26 Diane next argues that under both the trust and the applicable statutory authority, she had authority to pay herself "as trustee" for providing Elmer's care. Br. of Appellant at 17, 29. Although Diane conflates being compensated as a trustee with being compensated as Elmer's caregiver, we agree that she can recover her caregiving expenses from the trust.

¶27 Diane's confusion arises from the following trust language:

> My trustee shall pay itself reasonable compensation for its services as a fiduciary as provided in this agreement, and shall reasonably compensate those persons employed by my Trustee, including agents, auditors, accountants, and attorneys.

CP at 68. Diane understands this language to mean that a trustee may be paid reasonable compensation for fiduciary services, and she assumes that personal caregiving is within the scope of a trustee's services. Her understanding ignores the language "as fiduciary," which distinguishes Diane's ability to pay herself in her fiduciary capacity from paying the persons she employs. CP at 68. Diane conflates her dual role. On one hand, she was a trustee, with duties that included managing trust funds for Elmer's benefit and managing his needs. On the other, she was Elmer's caregiver.

¶28 A fiduciary is "required to act for the benefit of another person on all matters within the scope of their relationship . . . who must exercise a high standard of care in managing another's money or property." BLACK'S LAW DICTIONARY 702 (9th ed. 2009). While managing Elmer's trust funds, managing his personal affairs, and managing his other needs were within the scope of Diane's fiduciary duties as his trustee, actually providing Elmer's personal care was not.[8]

¶29 Diane's confusion of her dual roles is not fatal, however, as the trust also requires her to "reasonably

---

[8] For the same reason, Diane also misunderstands RCW 11.98.070, which states:

> A trustee . . . may:
>
> . . . .
>
> (26) Pay reasonable compensation to the trustee or co-trustees considering all circumstances including the time, effort, skill, and responsibility involved in the performance of services by the trustee.

Similar to the trust language, RCW 11.98.070(26) allows a trustee to pay itself reasonable compensation for its "services." Again, the scope of a trustee's services, for which they may reasonably compensate themselves, does not entail providing health care. A trustee's services are limited to those as a fiduciary.

compensate those persons [she] employ[s]." CP at 68. If Diane had hired a full-time nurse to provide Elmer's health care, the trust would have required her to use trust funds to reasonably compensate the nurse. Notably, the trust does not prohibit Diane from compensating herself as an employee in addition to her role as trustee. The trust's only requirement is that the compensation be "reasonable." CP at 68. We hold that Diane, as trustee, could compensate herself as an employee who provided for Elmer's personal needs.

¶30 In addition to Diane's reasonable expenses related to caring for Elmer, she is also entitled to reasonable compensation for her services as trustee. The trial court awarded her $5,000 for her services as trustee. She does not challenge this finding on appeal; therefore, we do not disturb that award. We hold that Diane is entitled to reasonable compensation as Elmer's caregiver and remand to the trial court to evaluate the reasonableness of the costs of the services she rendered in providing his care.

III. REPAIR OF PROPERTY

¶31 Diane next contends that the trial court erred in subtracting $10,000 from the roughly $20,000 she spent to repair and remodel the Ilwaco house kitchen. We agree that there was no reason to deduct this expenditure, as it was within her discretion to make.

¶32 Under the trust's express language, Diane could "hold property which is non-income producing . . . if the holding of such property is, in the sole and absolute discretion of [Diane], in the best interests of the beneficiaries."[9] CP at 71. Diane also had authority to take any action "reasonably necessary for the preservation of real estate and fixtures comprising a part of the trust property." CP at 74. Based on the trust's plain language, Diane had author-

---

[9] Diane certified in an affidavit that Elmer was born near his Ilwaco home and that it was where he wished to die.

ity not only to keep the Ilwaco house but also to preserve it and its fixtures.

¶33 *Webster's* defines "preservation" as "the act of preserving or the state of being preserved," and it defines "preserve" as "to keep safe from injury, harm, or destruction . . . to keep alive, intact, in existence, or from decay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1794 (2002). In the context of real estate, the plain meanings of "preservation" and "preserve" indicate that Diane could not only maintain the Ilwaco house, but also could use trust funds to improve the house. Preserving a house entails keeping it as an appreciating asset.

¶34 Here, even though Elmer was visiting only from time-to-time, the costs associated with maintaining the property contributed to its valuation's increase from $90,000 in 2001 to $217,000 in 2007. This increase reflects the reasonableness of expending trust funds to maintain the asset, possibly for future use if it had to be sold or mortgaged to provide funds to care for Elmer. Therefore, under the express trust language, we hold that Diane had authority to repair water damage and to remodel the kitchen and the trial court erred in reducing her interest in the remaining estate by $10,000.

IV. VALUE OF ILWACO PROPERTY

¶35 Without argument or citation to authority, Diane asks us to value the Ilwaco house at its 2001 appraised value of $90,000. The trial court, using its equitable powers, found that because both Diane and John were responsible for the delay in finalizing the estate, the Ilwaco house's value must be based on its 2007 appraised value of $217,000.

¶36 Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by authority); *State v. Elliott*, 114

Wn.2d 6, 15, 785 P.2d 440 (insufficient argument), *cert. denied*, 498 U.S. 838 (1990); *State v. Camarillo*, 54 Wn. App. 821, 829, 776 P.2d 176 (1989) (no references to the record), *aff'd*, 115 Wn.2d 60 (1990); RAP 10.3(a). Although Diane provides de minimis argument in her reply brief, albeit still without citations, her argument comes too late. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (argument and authority raised for the first time in reply brief is too late to warrant consideration); RAP 10.3(c). Similarly, John does not argue on appeal that we should use an appraised value more current than the 2007 value.

¶37 Because the parties have not put forth any authority or analysis with regard to using an appraised value other than $217,000, we do not disturb the trial court's finding that the Ilwaco house's value for purposes of dividing Diane's and John's interests in the remaining estate at $217,000.

## V. Attorney Fees

¶38 Both Diane and John requested attorney fees below. The trial court awarded John all of his requested attorney fees, amounting to $24,425.00, and awarded Diane one-half of her requested attorney fees, amounting to $12,358.17. RCW 11.96A.150(1) grants both trial courts and appellate courts broad discretion to order attorney fees. "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1). Generally, attorney fees may be awarded against a trust "only where the litigation results in a substantial benefit to the trust." *Bartlett v. Betlach*, 136 Wn. App. 8, 22, 146 P.3d 1235 (2006) (citing *In re Estate of Niehenke*, 117 Wn.2d 631, 648, 818 P.2d 1324 (1991)), *review denied*, 162 Wn.2d 1004 (2007). Diane correctly argues that the trial court improperly awarded attorney fees to John because the litigation did not result in a substantial benefit to the trust.

■ ¶39 Because the trial court erred in finding that Diane breached her duty to inform John, the trial court improperly awarded John all of his attorney fees. Because we hold that Diane did not breach her fiduciary duties as trustee, John is not entitled to attorney fees for this appeal. RCW 11.96A.150(1). Instead, Diane is entitled to an attorney fee award, both at the trial court and on appeal. Accordingly, we vacate the award of attorney fees to John below and remand to the trial court to award Diane attorney fees, for her expenses incurred below and on this appeal, after the estate is revalued and distributed.

## VI. Conclusion

¶40 Diane did not breach any duty to inform John of how she was managing their father's trust estate because his lack of knowledge did not cause him prejudice. She is therefore entitled to reasonable compensation for her fiduciary actions as well as her personal care of their father. We affirm the trial court's approval of the $59,176.67 Diane used of the liquid trust funds during Elmer's life for her personal care and, although the trial court may have found Diane's accounting of her personal care expenses adequate, the court did not determine whether the total of her claimed expenses were "reasonable." Accordingly, we remand to the trial court to reexamine and determine whether her remaining claimed expenses were reasonable and to award her further compensation for personal care she provided, in accord with the terms of the trust.

¶41 We hold that Diane is entitled to funds she spent to repair and remodel the Ilwaco kitchen after water damage. And we hold that the trial court properly used the 2007 appraised value of $217,000 for the Ilwaco house.

¶42 Finally, we hold that the trial court improperly awarded John attorney fees. We vacate these attorney fees

and remand to the trial court to set reasonable attorney fees to award to Diane for both the trial and the appeal.

¶43 Reversed and remanded.

HUNT and VAN DEREN, JJ., concur.