IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 81700-1-I |
| YVONNE BAKER, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| MARK BAKER, | |
| Respondent. | |

COBURN, J. — Mark and Yvonne Baker, while individually represented by attorneys, met with a mediator and signed a settlement agreement in a marriage dissolution proceeding. Yvonne, appearing pro se,[1] appeals from the trial court's entry of its final orders. We affirm.

FACTS

The Bakers were married on January 23, 1996 in China and have two teenage children, but only one child was a minor at the time of the dissolution. After 22 years of marriage, Yvonne, a stay-at-home mother, filed for dissolution of the marriage in King County Superior Court.

On July 18, 2019, the parties, each represented by an attorney, met with a

_____

[1] For clarity, we refer to the parties by their first names because they have the same last name. Mark also appears pro se on appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

mediator and entered into a CR 2A stipulation and agreement.[2]  The agreement addressed a parenting plan, child support, spousal maintenance, division of property, and allocation of debts.  The agreement stated that "[e]ach party agrees and stipulates this is a full and complete agreement between the parties and is enforceable in court."  In addition, the agreement provided that any disputes in drafting the final documents or other unresolved issues would be submitted to an arbitrator for binding arbitration.  The agreement also included a provision stating that "both parties acknowledge that this Agreement is just and equitable."

Pursuant to the agreement, Mark's attorney drafted the proposed findings and conclusions and final orders, and he sent copies to Yvonne's attorney.  On August 16, 2019, Yvonne's attorney withdrew as her counsel.  After Yvonne refused to sign the proposed pleadings, Mark requested arbitration to resolve the drafting disputes.  Yvonne also submitted a list of unresolved issues to the arbitrator.

The arbitrator considered submissions from the parties and issued a decision on March 27, 2020.  The arbitrator resolved several disputes but concluded that unresolved issues were to be decided in separate arbitration decisions.  The arbitrator directed the parties to submit responses and replies in support of the other unresolved issues with the latest deadline of May 29, 2020.  The arbitrator revised the draft proposed orders to conform to the arbitrator's decisions.  The arbitrator also determined the CR 2A agreement did not require

---

[2] In Washington State a trial court's authority to compel enforcement of a settlement agreement is governed by Civil Rule (CR) 2A.

drafting issues and other unresolved issues to be decided at the same time or require other unresolved issues to be decided prior to entry of the final orders. The arbitrator directed Mark's attorney to enter the orders as soon as possible. The arbitrator filed her decision on May 14, 2020.

On May 21, 2020, Mark filed a motion for entry of final pleadings. In response, Yvonne filed a motion on June 5, 2020, for a new trial date and to set aside the CR 2A agreement. The court held a hearing on June 22, 2020, but the record does not include the transcript from that hearing. However, in the court's findings and conclusions entered on June 30, 2020, the court wrote:

> The parties entered into an [sic] CR2A agreement on August 30, 2019. After the final orders were drafted, Petitioner refused to sign the orders. The parties then held an arbitration with the CR2A mediator, Cheryl Russell, and she found that the parties are bound by the terms of the parties' CR2A agreement. Before this Court, Petitioner again raised the same arguments and a hearing was held on June 22, 2020. The Court finds that the terms of the final orders are governed by the parties' CR2A agreement and the arbitration findings.

The court also entered the final dissolution decree, child support order, child support worksheet, and parenting plan. Yvonne appeals.

## DISCUSSION

We review dissolution orders for abuse of discretion. In re Marriage of Wilson, 165 Wn. App. 333, 339, 267 P.3d 485 (2011). Because Yvonne does not challenge the trial court's findings, they are verities on appeal. In re Marriage of Fiorito, 112 Wn. App. 657, 665, 50 P.3d 298, 303 (2002) (citing State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997)). This court does not review the trial

court's credibility determinations or weigh conflicting evidence. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

Procedural rules apply to both litigants who choose to proceed pro se and those who seek assistance of counsel. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (citing In re Marriage of Wherley, 34 Wn. App. 344, 349, 661, P.2d 155 (1983)). "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." Cook v. Brateng, 158 Wn. App. 777, 794, 262 P.3d 1228, (2010) (citing Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); State v. Camarillo, 54 Wn. App. 821, 829, 776 P.2d 176 (1989); RAP 10.3(a).

Yvonne's failure to follow procedures precludes our ability to review many of her claims. She rarely cites to the record. While she cites authority, she does so without providing meaningful analysis beyond conclusory statements. However, to the extent possible, we consider the merits of her claims.

Child Support Deviation

Yvonne first contends that the trial court erred in granting the motion to enter final orders because the respondent's child support obligation in the child support order deviates from the Washington State child support economic table without providing valid reasons for the deviation. We disagree.

When a trial court issues a child support order, it begins by determining the basic child support obligation from an economic table in the child support schedule, RCW 26.19.020, based on the parents' combined monthly net income

and the number and age of the children.  McCausland v. McCausland, 159 Wn.2d 607, 611, 152 P.3d 1013 (2007).

According to the child support economic table, a combined monthly net income greater than $7,600 but less than $7,700 lists the family obligation per child as $1,231.  RCW 26.19.020.  The court's final child support worksheet calculated the Bakers' combined monthly net income as $7,646.12.  Because the Bakers had one minor age child, the court determined the basic child support obligation was $1,231.  This calculation was consistent with the child support economic table.  After the court considered the $4,000 in maintenance income that Yvonne would be receiving, and the health insurance premiums Mark pays for the child, the court determined the proportional share of the standard calculation of child support as $734.81 from Yvonne and $496.19 from Mark.

Under RCW 26.19.075, the court may deviate from the standard calculation for multiple reasons.  RCW 26.19.075(1)(a)-(e).  If a party requests a deviation, "[t]he court shall enter findings that specify reasons for any deviation or any denial of a party's request."  RCW 26.19.075(3).  If reasons exist for deviation, "the court shall exercise discretion in considering the extent to which the factors would affect the support obligation."  RCW 26.19.075(4).

The monthly child support order reflected the same standard calculation from the child support worksheets.  However, the monthly child support payment amount in the child support order totaled $4,000.  The court explained the deviation: "[t]he parties reached an agreement in mediation of undifferentiated child support/maintenance of $4,000.00 a month that [Mark] will pay to [Yvonne]."

The CR 2A agreement states, "[Mark]'s child support obligation is included in [Mark]'s monthly payment to [Yvonne]" and that the husband is to pay the wife monthly maintenance of $4,000. "Agreement of the parties is not by itself adequate reason for any deviations from the standard calculation." RCW 26.19.075(5). However, Yvonne fails to articulate what the monthly child support payment should be or how exactly the court erred.

Accordingly, we cannot conclude that the trial court abused its discretion.

Imputed Income

Yvonne next contends that the trial court improperly imputed income to her. We disagree.

RCW 26.19.071(6) provides, "A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation. Income shall not be imputed for an unemployable parent."

Although Yvonne alleges that the court improperly imputed income to her, the record does not support this. The only income listed for Yvonne was the $4,000 monthly maintenance that she agreed to receive from Mark. Nothing is listed on the child support worksheets for imputed income. Thus, there is no alleged error to review.

Outstanding Arbitration Issues

Yvonne claims that the court erred in entering final orders when the arbitrator had not yet made final rulings on several major issues, errors and

6

omissions, and the arbitrator was still accepting corrections from Yvonne with a documentation due date on June 12. Yvonne cites to two documents in the record, (1) the declaration she filed the same day she filed a motion to set a new trial date and set aside the CR 2A agreement; and (2) the arbitrator's decision. Neither support her claim that the arbitrator was accepting documents from her until June 12. Based on the record before us, the arbitrator's decision directed Yvonne to submit documents prior to June 12 on unresolved issues and also determined that any unresolved issues were to be decided in a separate arbitration decision to avoid further delay in entering the final orders.

Furthermore, the court held a hearing prior to entering final orders, and the court found that Yvonne raised the same arguments previously submitted to the arbitrator.

It is the appellant's burden to perfect the record on appeal so that we have all the information and evidence relevant to the issues raised. See RAP 9.2(b); Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994). "An insufficient record on appeal precludes review of the alleged errors." Id. "An appellate court may decline to address a claimed error when faced with a material omission in the record." State v. Wade, 138 Wn.2d 460, 465, 979 P.2d 850 (1999).

Without the report of proceedings from the hearing, we are unable to determine if there were outstanding arbitration issues that should have precluded the court from entering final orders.

### Evidentiary Hearing

Without citing to the record or making any meaningful argument, Yvonne contends that the trial court erred in enforcing the CR 2A agreement without first holding an evidentiary hearing on issues of material fact raised by Yvonne. She also claims "[t]he trial court erred in conducting a hearing in which the opposing parties were not given equal treatment."

It is unclear what hearing Yvonne is referring to or if she is referring to her motion to set aside the CR 2A agreement. We know from the court's findings that it did hold a hearing eight days before entering its final orders, and that Yvonne raised the same arguments previously submitted to the arbitrator. However, that is all we know about the hearing. Yvonne failed to sufficiently brief these claims or provide a complete record for proper review.

### Unconscionability

Beyond claiming that "[t]he Separation Agreement was Unconscionable," Yvonne merely cites cases without explaining how they apply to her case or citing to the record. We decline to consider this claim.

Affirmed.

WE CONCUR:

_____

_____ Coburn, J.

_____ Andrus, A.C.J.