# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CARRI WILLIAMS, | No. 55453-4-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, an agency of Washington State, | UPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Carri Williams appeals the superior court's order dismissing her Public Records Act (PRA) claims against the Department of Corrections (DOC). Williams argues that the DOC violated the PRA by failing to provide a reasonable estimated response date in two specific communications it had with her. Williams also argues that the DOC violated the PRA because it unreasonably delayed the production of responsive records in each of her three PRA requests. Williams further argues that she is entitled to daily penalties, attorney fees, and costs for the DOC's alleged PRA violations. Williams also requests attorney fees and costs on appeal.

We hold that the DOC violated the PRA with respect to one response letter but not the other. We also hold that, based on the record, the DOC did not unreasonably delay the production of responsive records in each of Williams's three PRA requests. We further hold that Williams is entitled to attorney fees and costs for the violation concerning one of the response letters, but not penalties. However, Williams is not entitled to daily penalties, attorney fees, and costs with respect to her remaining PRA claims because she is not the prevailing party on those claims.

Accordingly, we reverse in part and affirm in part the trial court's order dismissing Williams's PRA claims. We remand the case to the trial court for a calculation of attorney fees and costs with respect to the August 23 letter claim. We also grant Williams's request for attorney fees and costs on appeal with respect to the August 23 letter claim in an amount to be set by our commissioner.

## FACTS

### I. FACTUAL BACKGROUND

Williams is an inmate housed at the Washington Corrections Center for Women (WCCW). In 2018 and 2019, Williams alleged that a corrections officer inappropriately touched her on several occasions pursuant to a pat down search. The DOC opened a Prison Rape Elimination Act[1] (PREA) investigation to determine whether Williams's claims were substantiated. The DOC determined that they were not.

The WCCW Superintendent, Deborah Wofford, reviewed the DOC's findings and determined that Williams had caused an innocent correctional officer to be investigated for sexual misconduct. Therefore, on May 15, 2019, the DOC informed Williams that she had violated WAC 137-25-030(549) by "providing false or misleading information during any stage of an investigation of sexual misconduct." Clerk's Papers (CP) at 689. Williams was then given a disciplinary hearing notice, setting the infraction hearing for May 31.

On May 21, Williams filed an emergency motion in the Supreme Court requesting to stay the disciplinary hearing. Williams also filed a petition for a writ of prohibition and/or mandamus (writ petition) challenging the legality of the DOC policy at issue, which imposes an infraction on an inmate who falsely accuses a DOC employee of sexual misconduct. Williams withdrew the

---

[1] 34 U.S.C. § 30301, *et seq.*

2

emergency motion because the DOC agreed to stay the disciplinary hearing while the writ petition was pending in the Supreme Court. While the writ petition was pending, Williams filed three PRA requests with the DOC. The Supreme Court ultimately dismissed the writ petition on March 6, 2020.[2]

II.     THE PRA REQUESTS AT ISSUE AND THE DOC'S RESPONSES

   A.     Request Number P-6581

   On May 31, 2019, the DOC received a PRA request from Williams.[3] That request sought the following:

> 1. The witness statement provided by Inmate Sandra Weller for use at the disciplinary hearing for inmate [] Williams, DOC #370021, that was previously scheduled for May 31, 2019.
>
> 2. Any other witness statement that has been provided to the [DOC] for use at that disciplinary hearing, and any other witness statement that has been obtained in the course of investigating any of [] Williams' PREA complaints.
>
> 3. Any report or memo written by Sgt. Channel regarding the Williams disciplinary hearing or regarding any allegation of misconduct by Corrections [O]fficer Alice Kaleopa.
>
> 4. Any report, memo, or document sent to Sgt. Channel regarding the Williams' disciplinary hearing or regarding any allegation of misconduct by Corrections Officer [] Kaleopa.
>
> Since this is a very discrete request, I am requesting a very fast response.

CP at 798. The request was assigned tracking number P-6581.

---

[2] The Supreme Court dismissed the writ petition "[b]ecause [Williams] ha[d] other plain, speedy, and adequate remedies, other than filing a petition for a writ, including such actions as a personal restraint petition, a Section 1983 claim, and a declaratory judgment action." CP at 704.

[3] Denise Vaughn, the DOC Information Governance Director, stated in her declaration that the DOC received this PRA request on May 30. However, e-mail correspondence indicates that the DOC received this PRA request on May 31. Therefore, May 31 appears to be the correct date and is the date we will use in this opinion.

Within five business days of receiving the request, on June 6, the public records specialist responded by acknowledging receipt of Williams's PRA request. The public records specialist also responded by stating that "[DOC] staff are currently identifying and gathering records, if any, responsive to your request. I will respond further as to the status of your request *within* 44 business days, *on or before* August 8, 2019." CP at 800.

On August 8, the public records specialist updated Williams that additional time was needed to process her request, which was based on the need to review the records and to notify affected staff. The public records specialist stated that Williams should expect another update "*within* 26 business days, *on or before* September 16, 2019." CP at 803.

On August 29, the public records specialist produced 52 pages of responsive records. This disclosure occurred the same day, but shortly after, Williams and the DOC had submitted the statement of agreed facts for the writ petition in the Supreme Court. The public records specialist explained that certain records were redacted in part and provided a denial form explaining those redactions. The DOC then closed this request.

B.     Request Number P-7712

On July 24, 2019, the DOC received another PRA request from Williams. That request sought the following:

1. All letters, emails or other written communications from or to Superintendent Wofford regarding Corrections Officer [] Kaleopa, including any and all complaints about her conduct by prisoners and the documents in any resulting investigations.

2. All emails or texts to or from Superintendent Wofford which contain Corrections Officer [] Kaleopa's name and any of the following terms: abuse; misconduct; complaint; discipline; and/or transfer, and including both emails or texts on official DOC accounts or devices, and emails and texts on personal accounts or devices.

3. All letters, emails or other written communications from or to any past or current superintendent of Stafford Creek regarding Corrections Officer [] Kaleopa,

4

including any and all complaints about her conduct by prisoners and the documents in any resulting investigations.

4. All emails to or from any past or current superintendent of Stafford Creek which contain Corrections Officer Kaleopa's name and any of the following terms: abuse; misconduct; complaint; discipline; and/or transfer.

5. Any reports or memos written for or by WCCW personnel regarding any allegation of misconduct by Corrections Officer [] Kaleopa.

6. Any reports, memos, or documents written for or by Stafford Creek personnel regarding any allegation of misconduct by Corrections Officer [] Kaleopa.

CP at 26, 1935. The request was assigned tracking number P-7712.

Within five business days of receiving the request, on July 31, the public records specialist acknowledged receipt of Williams's PRA request. Based on the potentially voluminous nature of the request, the public records specialist informed Williams that responsive records would be disclosed on an installment basis. The public records specialist also informed Williams that further clarification was needed in order to move forward with her PRA request. Specifically, they asked Williams to "[p]lease clarify a time frame in which you wish records to be searched for, such as records within the time frame of 1/1/2019-7/24/2019, so that a productive search for records can be conducted." CP at 30, 1934. The specialist further stated that "[i]f clarification regarding your request is not received within 30 days of the date of this letter, your request will be administratively closed." CP at 30, 1934.

On August 12, Williams provided the requested clarification. On August 23, the public records specialist updated Williams that DOC staff were identifying and gathering records and stated that an update would be provided "*within* business days, *on or before*, 2019."

The DOC would eventually split this request, which calved P-7712 (discussed further below), after receipt of an August 29 clarification from Williams. After the August 29 clarification, DOC sent two letters on September 11, one for P-7712 and one for P-8646 (this

request is discussed below). The September 11 letter for P-7712 advised that the date the DOC expected to provide an update would remain the same—on or before November 7. The DOC did provide an update to P-7712 on November 7, as described below.

Due to the language of request number P-7712, it was determined that a staff member from the DOC Headquarters Information Technology unit would have to run a search on "live" e-mails. CP at 753. The search for live e-mails was in addition to the search for responsive records at WCCW, which in turn produced a large amount of data requiring review.

On November 7, the public records specialist updated Williams that they had received over 800 pages of records to review. The public records specialist further stated that she needed additional time to review the records and to notify affected staff. She anticipated that the first installment of records would be produced "within 53 business days, *on or before* January 29, 2020." CP at 46.

On January 29, the public records specialist updated Williams that the first installment had been reviewed for disclosure but was still undergoing the staff notification process. Thus, the public records specialist stated that she needed additional time to respond and anticipated producing the first installment "on or before February 25, 2020." CP at 1919.

On February 25, the public records specialist updated Williams that the first installment of responsive records was still undergoing the staff notification process, and therefore, she needed additional time to respond. Thus, the public records specialist advised that she would produce the first installment "on or before March 10, 2020." CP at 1917.

On March 10, the public records specialist produced the first installment, which contained 403 pages of responsive records. The public records specialist stated that certain redactions were made and provided a denial form explaining those redactions.

On July 8, the public records specialist updated Williams that records for the next installment were identified and gathered, but were still undergoing review for disclosure. The public records specialist also advised that the DOC would have to notify affected staff prior to disclosing the next installment. Thus, the public records specialist advised that additional time was needed to respond and anticipated producing the second installment "on or before September 8, 2020." CP at 1921.

On September 22, after receiving payment, the public records specialist produced the second and final installment, which contained 505 pages of responsive records. The DOC provided a log explaining the redactions. The DOC then closed this request.

C.      Request Number P-8646

As noted above, on August 29, 2019, Williams sent a follow up letter to the DOC's August 23 letter. First, Williams clarified that the timeframe for request number P-7712 should include records up to the date of first production, which was beyond July 24, 2019. Second, she clarified that "[item] numbers one and two [for request number P-7712 were] intended to address the records of the WCCW superintendent for the given timeframe, whomever that may be, and not limited to the current Superintendent, [] Wofford." CP at 63.

On September 11, the public records specialist responded to Williams's August 29 letter. The public records specialist stated that Williams did not mention the inclusion of any former WCCW Superintendents for items one and two in request number P-7712. Again, as noted above, the public records specialist advised that a new request would be created to address Williams's request for additional records. She advised that Williams would receive a separate response under a separate tracking number. Again, the public records specialist also advised that the date in which

7

Williams would receive a status update for request number P-7712 remained the same, "*on or before* November 7, 2019." CP at 38.

That same day, the public records specialist sent Williams another letter advising her that the August 29 letter constituted a new PRA request and assigned it tracking number P-8646. The public records specialist also advised that responsive records would be disclosed on an installment basis due to the potentially voluminous nature of the request and that she would respond further "*within* 54 business days, *on or before* November 26, 2019." CP at 58.

Much like request number P-7712, the DOC determined that a staff member from the DOC Headquarters Information Technology unit would have to run a search on "live" e-mails for this request. CP at 754. This produced a large amount of data requiring review.

On November 26, the public records specialist updated Williams that she needed additional time to review responsive records and to undergo the staff notification process prior to disclosure. The public records specialist stated that she would respond further "*within* 57 business days, *on or before* February 21, 2020." CP at 84.

On February 21, the public records specialist updated Williams that she had completed the review process, but stated that she needed additional time to respond because the records were undergoing the staff notification process. Therefore, the public records specialist stated that she could offer responsive records "within 11 business days, on or before March 9, 2020." CP at 2270.

On March 9, the public records specialist produced 309 pages of responsive records. The public records specialist informed Williams that certain redactions were made and provided a denial form explaining those redactions. The DOC then closed this request.

III.     THE DOC'S RESPONSE PROCESS TO PRA REQUESTS

Denise Vaughn is the DOC's Information Governance Director. In this role, she oversees management of agency records and supervises the DOC's public records unit. The public records unit is a centralized unit located at the DOC's headquarters in Tumwater, Washington. The public records unit is comprised of 27 fulltime staff, which includes 4 administrative staff, 16 public records specialists, 2 management analysts, 4 unit supervisors, and the Information Governance Director, Vaughn.

The DOC operates 12 facilities, 86 field offices, and 6 community justice centers across Washington State. The DOC manages approximately 17,000 incarcerated individuals and supervises approximately 15,000 individuals in the community. The DOC also employs approximately 8,500 individuals, making it the second largest agency in the state in terms of employment.

The DOC does not have a centralized records system. This means each facility maintains its own records for those individuals under the management, supervision, and employment of the DOC at that particular facility. The DOC also has a number of different electronic records systems. The level of access can vary depending on the type of electronic storage system and staff security clearance. Relevant here, the public records specialist had to forward each of Williams's PRA requests to the WCCW in order to identify and gather responsive records. Once DOC staff at WCCW identified and gathered responsive records, they were sent to the public records specialist for review.

The DOC receives numerous PRA requests each year. In 2019, the DOC received 13,892 PRA requests. Of these requests, 5,371 were assigned to the public records unit. This meant that each public records specialist managed approximately 120 PRA requests during the time period at issue here.

When PRA requests are received, they are logged, assigned a tracking number, and assigned to a public records specialist, correctional facility, field office public records coordinator, or records staff for processing. Response time frames are based on many factors, such as the staff member's current workload, complexity and scope of the records requested, the number of sources for potentially responsive records, scheduling issues, and any other factor which may affect production of the records. The DOC does not have a method to prioritize PRA requests, even if they are deemed urgent by the requestor.

Additional time is often needed for the DOC to fully respond to a request. This is caused by factors such as the need to clarify the request, the time it takes to locate and assemble the requested documents, the requirement to notify persons affected by the request, and the need to determine whether any of the information contained in the responsive records are exempt from disclosure and require redaction. Relevant here, Vaughn declared that the "[public records unit] was not involved in Williams' [writ] petition nor would its staff be aware of any deadlines associated with the case." CP at 755. Instead, the time frames for each of Williams's requests were determined by the public records specialist based on the criteria stated above.

IV.  PROCEDURAL HISTORY

On November 10, 2020, Williams filed an amended complaint in Thurston County Superior Court alleging that the DOC violated the PRA. In her opening brief, Williams argued that the DOC violated the PRA by: failing to state an estimated production date in its August 23

letter with respect to request number P-7712; failing to provide the requested records within a reasonable time with respect to each request number; and denying certain requested records. Williams also requested penalties, attorney fees, and costs.

In response, the DOC argued that Williams's PRA claims should be dismissed. First, the DOC argued that Williams's PRA claims under RCW 42.56.520 were moot because she had already received the requested records. Second, the DOC argued that its failure to provide an estimated response time in its August 23 letter did not violate the PRA. Third, the DOC argued that even if Williams's claims were not moot, it did not unreasonably delay the production of responsive records. Finally, the DOC argued that Williams's denial claim was meritless because its search was adequate and because it had no duty to produce a record that was non-existent.

In her reply brief, Williams appeared to raise a new issue. More specifically, Williams argued that, in addition to the DOC's alleged inadequate response in its August 23 letter, the DOC also violated the PRA by failing to provide an estimated production date in its September 11 letter, which concerned request number P-7712.

The superior court agreed with the DOC. Accordingly, the court dismissed Williams's PRA claims. Williams appeals.

## ANALYSIS

I.    STANDARD OF REVIEW

"The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 78, 493 P.3d 1245 (2021) (internal quotation marks omitted) (quoting *Serv. Emps. Int'l Union Local 925 v. Univ. of Wash.*, 193 Wn.2d 860, 866-67, 447 P.3d 534 (2019) (*SEIU*)). The purpose of the PRA is to increase governmental transparency and accountability by making public records accessible to Washington residents. *John Doe A v. Wash.*

11

*State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). Accordingly, the PRA must be "liberally construed and its exemptions narrowly construed." RCW 42.56.030.

We review de novo an agency's action in responding to a PRA request. *Freedom Found. v. Dep't of Soc. & Health Servs.*, 9 Wn. App. 2d 654, 663, 445 P.3d 971 (2019); *see also* RCW 42.56.550(3). "Where, as here, the record on appeal consists solely of declarations or other documentary evidence, we stand in the same position as the trial court." *SEIU*, 193 Wn.2d at 866. Accordingly, we may affirm the trial court's order on any basis supported by the record.[4] *O'Dea*, 19 Wn. App. 2d at 79.

II.     REASONABLE ESTIMATE

Williams argues that the DOC violated RCW 42.56.520 because it did not provide her with a reasonable estimated response date in its August 23 and September 11 letters, which concerned request number P-7712. Williams relies on *Hikel v. City of Lynnwood*, 197 Wn. App. 366, 389 P.3d 677 (2016), to support her argument. We agree that the August 23 letter violated the PRA but disagree that the September 11 letter violated the PRA.

A.     Legal Principles

The PRA provides a cause of action for when "an agency has not made a reasonable estimate of the time that the agency requires to respond to a public record request." RCW 42.56.550(2).

---

[4] Williams contends that trial court's order dismissing her PRA claims should be reversed because its findings of fact do not support its conclusions of law. Because Williams's PRA claims are subject to de novo review, we do not address whether the trial court's findings of fact are support by substantial evidence and whether those findings support its conclusions of law. RCW 42.56.550(3).

An agency must respond promptly to a public records request. RCW 42.56.520(1); *Rufin v. City of Seattle*, 199 Wn. App. 348, 359, 398 P.3d 1237 (2017). "RCW 42.56.520 governs an agency's initial response to a PRA request." *Hobbs v. State*, 183 Wn. App. 925, 941, 335 P.3d 1004 (2014). In relevant part, the PRA provides that, "[w]ithin five business days of receiving a public record request," the agency must respond by "[a]cknowledging . . . the request and asking the requestor to provide clarification for a request that is unclear, and providing, to the greatest extent possible, a reasonable estimate of the time the agency . . . will require to respond to the request if it is not clarified." RCW 42.56.520(1)(d).

In *Hikel*, five business days after a public records request was made, the agency acknowledged receipt of the request and asked for clarification. 197 Wn. App. at 370. Hikel argued that the agency violated the PRA because it did not provide him with a reasonable estimate of the time it would take to respond to his request. *Id*. at 372. The *Hikel* court concluded that "[an initial] response that does not either include access to the records or deny the request must contain the agency's estimate of the time it will take to respond." *Id*. at 373. Accordingly, the court held that the request for clarification was deficient because it did not contain a time estimate of when the agency would respond to Hikel's request. *Id*. at 373-75.

B. The DOC's August 23 Letter Violated the PRA

Here, the DOC responded to request number P-7712 within five business by requesting a clarification. Williams responded with the requested clarification on August 12. In reply, the DOC stated in its August 23 letter that it would provide a status update "*within* business days, *on or before*, 2019." CP at 36. While the omission of the estimated response date appears inadvertent, this letter nevertheless violates RCW 42.56.520 because, as in *Hikel*, it wholly fails to provide a

reasonable, estimated response date that the DOC expected to begin producing responsive records. Therefore, we hold that the DOC's August 23 letter violated RCW 42.56.520.

### C. The DOC's September 11 Letter Did Not Violate the PRA

Here, as explained above, on August 29, 2019, Williams sent a follow up letter to the DOC's August 23 letter by providing further clarification for request number P-7712. On September 11, the public records specialist advised that the date in which Williams would receive a status update for request number P-7712 remained the same, "*on or before* November 7, 2019." CP at 38. However, this letter does not violate RCW 42.56.520 because it was not the initial response letter to request number P-7712. Williams provides no citation to authority requiring an agency to provide estimated production dates in letters subsequent to the initial response letter. *See Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010) ("Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis."). Therefore, we hold that the September 11 letter that Williams takes issue with did not violate the PRA.[5]

### III. TIMING OF PRODUCTION[6]

Williams argues that the DOC violated the PRA by using its estimated response times to unreasonably delay its response to each of her three requests. Specifically, Williams contends that the DOC unreasonably delayed the production of responsive records for each of her PRA requests based on: (1) the amount of time it took the DOC to produce the records and (2) the fact that the

---

[5] As noted above, there were two letters sent on September 11. Here, Williams does not take issue with the letter pertaining to request number P-8646, but only that pertaining to P-7712.

[6] Williams also addresses the DOC's mootness argument while discussing unreasonable delay. Because the DOC does not appear to advance this argument on appeal, we do not address the issue.

requested records were disclosed after key deadlines had passed while her writ petition was pending in the Supreme Court. We disagree.

A.    Legal Principles

The PRA requires agencies to provide the "'fullest assistance'" and the "'most timely possible action on requests for information.'" *Freedom Found.*, 9 Wn. App. 2d at 673 (internal quotation marks omitted) (quoting *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 651, 334 P.3d 94 (2014)); RCW 42.56.100. "In determining whether an agency acted promptly in producing responsive records we examine whether the agency's response was thorough and diligent. Whether the agency responded with reasonable thoroughness and diligence is a fact-specific inquiry." *Freedom Found.*, 9 Wn. App. 2d at 673 (internal citations omitted).

RCW 42.56.080(2) permits agencies to produce responsive records on a partial or installment basis. *Hobbs*, 183 Wn. App. at 942. The PRA also permits an agency to extend the amount of time it needs to respond to a PRA request based on changing circumstances:

> Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request.

RCW 42.56.520(2). The PRA does not limit the number of extensions an agency may require to respond to a request. *Andrews*, 183 Wn. App. at 652; *see also* WAC 44-14-04003(7) ("[e]xtended estimates are appropriate when the circumstances have changed"). However,"[w]hile agencies may provide a reasonable estimate of when they can produce the requested records . . . they cannot use that estimated date as an excuse to withhold records that are no longer exempt from disclosure." *Wade's Eastside Gun Shop, Inc. v. Dep't of Lab. & Indus.*, 185 Wn.2d 270, 289, 372 P.3d 97 (2016).

15

B. The DOC Did Not Unreasonably Delay Its Responses to Each PRA Request

Here, the DOC acted with reasonable thoroughness and diligence with respect to all three of Williams's PRA requests. Based on the record before us, the estimated response times were determined by the size and scope of the request, workload of the public records specialist, and time consuming nature of the response process.

The record shows that the response process was time consuming especially when viewed in light of the public records unit's high workload. When each PRA request was received, the public records specialist had to reach out to WCCW staff to obtain the requested records because the DOC does not have a centralized records system. After DOC staff identified and gathered responsive records, the public records specialist had to review each record to analyze whether the requested information would be exempt, redacted, or required notifying third persons affected by the request. This process is necessarily time consuming. Additionally, the record shows that the DOC received numerous PRA requests in 2019: 13,892 requests were made in total, 5,371 of which were assigned to the DOC's public records unit, which handled the requests at issue here. This meant that the assigned public records specialist managed approximately 120 PRA requests at the time of Williams's requests. Since the DOC does not prioritize PRA requests, this implies that requests were processed in the order received. Therefore, the response process and existing workload of the public records specialist necessarily impacted the timing for each of the disclosures.

For request number P-6581, the record shows the public records specialist responded within five business days of receiving the request, attended to the request, provided timely updates, and even produced the requested records two weeks before the estimated production date of September 16. Williams takes issue with the fact that it took the DOC 97 days to produce 52 pages

of records and that key deadlines in the writ petition had passed. But given the time consuming nature of the response process and existing workload of the public records specialist, we conclude that the DOC acted with reasonable thoroughness and diligence, and therefore, promptly responded to request number P-6581. There was no unreasonable delay based on the record before us.

For request number P-7712, the record shows that the public records specialist provided timely updates, attended to her request, and generally kept in line with the estimated response dates.[7] To the extent those dates could not be honored, the record demonstrates that the public records specialist timely notified Williams and provided the records as quickly as practicable. Again, Williams takes issue with DOC's response time in disclosing responsive records for this request (434 days) and the fact that those records were disclosed after the writ petition was denied. However, the record shows that DOC staff had a large amount of data to review for this request. Furthermore, numerous redactions had to be made for both installments and affected staff had to be notified, which impacted timing. Given the scope of the request, workload of the public records specialist, and time consuming nature of the response process, we conclude that the DOC acted with reasonable thoroughness and diligence, and therefore, promptly responded to request number P-7712. There was no unreasonable delay.

For request number P-8646, the record shows that the public records specialist attended to Williams's request, provided timely updates, and produced responsive records within its estimated time frame. Williams again expresses dissatisfaction with the amount of time it took for the DOC to produce responsive records for this request (180 days) and the fact that the records were

---

[7] Though, as explained above, we do hold that the August 23 letter violated RCW 42.56.520. This is a separate and distinct claim from whether the DOC unreasonably delayed the production of responsive records.

disclosed after the writ petition was denied. However, much like request number P-7712, this request required the DOC staff to review a large amount of data. Additionally, redactions had to be made and affected staff had to be notified given the nature of the requested records. These factors necessarily impacted to the timing of the disclosure. Based on the scope of the request, workload of the public records specialist, and time consuming nature of the response process, we conclude that the DOC acted with reasonable thoroughness and diligence, and therefore, promptly responded to request number P-8646. There was no unreasonable delay.

C.    Williams's Remaining Arguments Fail

Williams appears to argue in passing that the DOC failed to provide an explanation for the time extensions with respect to each of her records requests, which supports her unreasonable delay claims. However, "[RCW 42.56.520] does not require the agency to provide an explanation for its time estimate." *Freedom Found*., 9 Wn. App. 2d at 665. And the PRA does not limit the number of extensions an agency may require to respond to a request. *Andrews*, 183 Wn. App. at 652; WAC 44-14-04003(7). Regardless, the DOC did provide explanations for their extensions for all three PRA requests, which were based on the need to locate and assemble records, review whether those records were exempt from disclosure, and notify affected staff. Such extensions are proper under the PRA. RCW 42.56.520(2). Accordingly, this argument fails.

Williams also appears to argue, without any citation to authority, that the DOC unreasonably delayed the production of her requested records because it had failed to prioritize her PRA requests over others. As stated above, "[a]ppellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook*, 158 Wn. App. at 794; RAP 10.3(a)(6). Because Williams fails to support her argument with any citation to authority, we do not address her claim.

IV.    DAILY PENALTIES, ATTORNEY FEES, AND COSTS

Williams argues that she is entitled to daily penalties, attorney fees, and costs as a result of the DOC's alleged PRA violations. We agree that Williams is entitled to attorney fees and costs for the August 23 violation, but decline to award penalties for the error. We decline to award penalties, attorney fees, and costs for the other alleged PRA violations because Williams is not the prevailing party with respect to those claims.

The PRA provision authorizing awards of penalties, fees, and costs reads:

> *Any person who prevails* against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4) (emphasis added). Because Williams was serving a criminal sentence in a state operated correctional facility on the date she made her PRA requests, she may not recover daily penalties unless the court finds that the DOC acted in bad faith:

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record.

RCW 42.56.565(1).

Here, Williams is the prevailing party with respect to her August 23 letter claim. Because she is the prevailing party on the August 23 letter claim, we hold that Williams is entitled to recover attorney fees and costs with respect to that claim. However, she is not entitled to penalties for this error. *See Rufin*, 199 Wn. App. at 360 ("RCW 42.56.550(4) authorizes a penalty for the denial of the right to inspect or copy a public record, but does not authorize a freestanding penalty for lack

of a five-day letter."). Accordingly, we remand the case to the trial court to calculate fees and costs with respect to the August 23 letter claim.

On the other hand, Williams is not the prevailing party with respect to her other PRA claims. Because she is not the prevailing party on those claims, we hold that Williams is not entitled to recover daily penalties, attorney fees, or costs. RCW 42.56.550(4).

V.     ATTORNEY FEES ON APPEAL

Williams also requests attorney fees and costs on appeal under RAP 18.1 and RCW 42.56.550(4). We grant her request in part and deny her request in part.

We may grant an award of reasonable attorney fees and costs on appeal to a party that requests it in its opening brief, and as long as applicable law provides for such an award. RAP 18.1(a), (b). As discussed above, the PRA grants the right to recover attorney fees and costs to "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4).

Here, Williams is the prevailing party with respect to her August 23 letter claim. But she is not the prevailing party with respect to her remaining PRA claims. Accordingly, we grant Williams's request for attorney fees and costs with respect to the August 23 letter claim in an amount to be set by our commissioner, but deny her request for the remaining claims. RCW 42.56.550(4).

CONCLUSION

We reverse in part and affirm in part the trial court's order dismissing Williams's PRA claims. We remand the case to the trial court for a calculation of attorney fees and costs with

20

respect to the August 23 letter claim. We also grant Williams's request for attorney fees and costs on appeal with respect to the August 23 letter claim in an amount to be set by our commissioner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, J.

Cruser, A.C.J.