# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOEL ANDERSON and LISA ANDERSON, a married couple, and ANDERSON CONSTRUCTION NW LLC (ACNW), a Washington limited liability company,<br><br>Respondents,<br><br>v.<br><br>ERNEST EDSEL and JUDY LAMB, a married couple, and the marital community thereof, and SANDHURST CORP., a Delaware corporation.<br><br>Appellants.<br><br>AMERICAN CONTRACTORS INDEMNITY Co., (ACIC), surety bond # 100277347, for (ACNW), KITSAP MASON ELECTRICIAN, INC., and, LEXON ISURANCE COMPANY, surety bond # 9817799 for Kitsap Mason Electrician, Inc.,<br><br>Third Party Defendants Below. | No.  57074-2-II<br><br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Ernest Edsel hired Joel and Lisa Anderson through their business entity, Anderson Construction NW, LLC (the Andersons) for a home remodel project.  A dispute resulted and the Andersons sued Edsel, Judy Lamb, and Sandhurst Corporation, the owner of the home, alleging breach of contract and unjust enrichment.  The case was set for mandatory arbitration.

The Andersons prevailed at the arbitration, and an award was entered in their favor.  Edsel and Lamb requested a trial de novo.

Following trial, the jury returned a verdict in favor of the Andersons. Prior to the trial court entering judgment, Edsel filed a motion for judgment notwithstanding the verdict (JNOV), making numerous arguments, all of which were apparently denied by the trial court. Edsel also filed a motion for a new trial and/or reconsideration, which the trial court denied.

Edsel and Lamb appeal, arguing the trial court erred by (1) improperly denying disability accommodation requests made by Lamb, (2) failing to determine the contract was unenforceable for several reasons, (3) wrongfully entering an order that failed to address all the parties and claims, and (4) failing to give certain jury instructions. Edsel also argues the trial court did not have subject matter jurisdiction because the Andersons no longer possess the underlying claim.

We reject each of Edsel's and Lamb's arguments and affirm. We grant the Andersons' requests for attorney fees and costs on appeal.

## FACTS

### I. BACKGROUND

In November 2017, Edsel entered into a contract with the Andersons to remodel a home for Edsel and Lamb, who were married. The contract contained a 10 percent interest late fee which provided,

> *note if payment(s) are not met as outlined above a 10 [percent] intrest [sic] fee will be added monthly until full payment is received.

Clerk's Papers (CP) at 453. The contract also provided for attorney fees and costs, stating, "If accounts exceed more than 60 days past due you will be liable for all fees (including attorney and court fees) in order to collect this amount in full." CP at 453.

Trouble began nearly a year later in November 2018, when the Andersons sent a statement to Edsel and Lamb. The statement requested that Edsel and Lamb pay the balance owed, plus a late fee that amounted to 10 percent of the balance. At the bottom of the page, the statement said, "ALL ACCOUNTS WILL BE ASSESSED A 10 [PERCENT] MONTHLY FINANCE CHARGE ON ALL BALANCES OVER 30 DAYS." CP at 457.

About three weeks later, the Andersons sent another statement to Edsel and Lamb that added an additional 10 percent late fee to their total. This statement had the same provision regarding the late fee at the bottom of the page.

Several months later, in February 2019, the Andersons, both personally and through their business entity, Anderson Construction NW, LLC, filed a complaint against Edsel, Lamb, and Sandhurst Corporation, alleging breach of contract and unjust enrichment for Edsel's and Lamb's failure to pay.

Edsel and Lamb filed an answer. Edsel also filed counterclaims against the Andersons and a third party complaint against a subcontractor (Kitsap Mason Electrician, Inc.) and their respective bonding companies. Edsel and Lamb represented themselves pro se.[1]

II. ARBITRATION

Given the amount in controversy, the case was set for mandatory arbitration under Superior Court Civil Arbitration Rules (SCCAR). Lamb did not attend or participate in the arbitration.[2]

---

[1] Edsel is an attorney with an active license to practice law in Texas. He was also previously admitted to practice law in Washington, however his Washington bar license status was inactive.

[2] Lamb alleges she had disabilities that prevented her from attending the arbitration. She further alleges that the arbitrator never returned her calls about an accommodation or offered to let her attend by telephone.

Following the arbitration, the arbitrator entered an award in favor of the Andersons and against Edsel and Lamb in the amount of $13,834 for past due amounts, plus late fees described as "penalt[ies]" at the rate of 10 percent per year accruing from August 25, 2018, to February 25, 2020, and attorney fees and costs. CP at 580.

The arbitrator's award also provided that it was based, in part, on two instances of a failure to participate. First, an order of default was entered against Sandhurst Corporation. Second, the award stated,

> [T]here was an election by the third party plaintiffs, Ernest Edsel and Judy Lamb, not to participate, nor submit a pre-hearing statement of proof, produce exhibits or call witnesses as to their first and second causes of action noted in their . . . Third Party Complaint,[3] and thus no decision or award was rendered on the counterclaim.

CP at 580. On April 23, 2020, the arbitrator filed an amended arbitration award that provided the amounts of the attorney fees and costs awarded to the Andersons. Thereafter, both Edsel and Lamb requested a trial de novo.

III. LAMB'S FIRST REQUEST FOR ACCOMMODATION AND MOTION IN LIMINE REGARDING LAMB'S PARTICIPATION

Trial was scheduled for the spring of 2022. On March 25, 2022, Lamb filed, a one page "Verified ADA Accommodation Request" under the Americans with Disability Act (ADA). CP at 119. She requested an accommodation to remotely attend the trial through Zoom due to her disabilities. Lamb stated that she was recovering from a surgery performed three weeks before

---

[3] The first cause of action in the third party complaint was for "Breach of the $800 Window Remodel Agreement." CP at 38. The second cause of action was for "Breach of the $30,000 Basement Remodel Agreement(s) or, in the Alternative, Quasi Contract Cause for Damages Only." CP at 39 (some capitalization omitted).

and, as a result, her vocal cords were damaged and she was barely able to speak. She also noted that she had other disabilities with extensive medical needs. The accommodation request did not provide any supporting medical documentation. The record does not include any response from the trial court to this request for Zoom access, but notably, the proceedings were already available to the public by Zoom.

Meanwhile, the Andersons filed a motion in limine seeking to prohibit Lamb's participation in the trial de novo. They raised two arguments. First, the Andersons argued Lamb waived her right to participate in the trial by failing to participate in arbitration. They contended that although Lamb signed the application for a trial de novo, she did not have the right to do so because her right to a trial was waived under the arbitration rules. Due to this waiver, the Andersons contended that the arbitration award as to Lamb was binding and Edsel could not raise any issues on her behalf or represent her during the trial. Second, the Andersons argued that Edsel should be prohibited from referencing Lamb as a party.

IV. TRIAL COURT'S RULING ON MOTION IN LIMINE REGARDING LAMB

After hearing arguments, the trial court orally granted the Andersons' motion on March 30. One day later, on March 31, the trial court reiterated its ruling. The clerk's minutes state,

> Court inquires about Motion in Limine. [Andersons' counsel] would need time to go through exhibits. Has questions about Ms. Lamb being brought up to the jury. Needs clarification if the jury is to hear if Ms. Lamb is a defendant in the trial. Court refers to Motion in Limine [regarding Lamb's participation]. Decided that Mr. Edsel would not be serving as an advocate to Ms. Lamb. She waived her right to trial for failing to participate in arbitration under [SCCAR] 5.4. Court will grant

5

[the motion in limine] finding that Ms. Lamb will not participate in trial as she did not participate in arbitration. Court grants motion.[4]

CP at 299 (boldface omitted).

## V. LAMB'S SECOND REQUEST FOR ACCOMMODATION

On April 4, 10 days after her first request for accommodation and several days after trial had started, Lamb filed a second request for accommodation. Lamb then claimed that due to her disabilities, she required a machine or computer that would allow text or a computer-generated voice to link into the court's Zoom system. She further alleged that no one from the court contacted her about her first disability request. Like her first request, Lamb's second request for accommodation did not contain any supporting medical documentation.

## VI. TRIAL COURT'S RESPONSE TO LAMB'S REQUESTS FOR DISABILITY ACCOMMODATIONS

On the same day it received Lamb's second accommodation request, the trial court issued a response. The trial court noted that it had not denied her first accommodation request or prohibited her from attending the trial remotely even though she had not provided sufficient notice to the trial court. The trial court stated that the matter had been publicly available over Zoom since pretrial motions on March 29 and the access code had been provided.

The trial court also stated that Lamb's second accommodation request asking for a machine or computer that would allow text or computer-generated voice was a substantial expansion of her first accommodation request. The trial court noted that because her surgery was on March 4, she

---

[4] In contrast to the clerk's minutes, the Andersons claim in their briefing that the motion in limine regarding Lamb was never ruled upon by the trial court because she did not appear at trial in any form.

would have been aware of the extent of her disability well before the first request. The trial court's response suggested it was denying her second request.

However, the trial court's response did not contain an overt denial of her second request. Beyond its statement about the substantial expansion of Lamb's accommodation request and its questioning of the request's timeliness, the trial court also did not provide a written explanation of its reasoning for not granting Lamb's request and did not explain her rights to file an ADA complaint with the United States Department of Justice.

## VII.  TRIAL AND JURY VERDICT

The case proceeded to trial with only Edsel participating as a defendant.[5] The proceedings were apparently contentious. In the course of Edsel's cross-examination of Joel Anderson, the bailiff informed the trial court that one of the jurors said they feared for their safety. The trial court then held a discussion in the courtroom with the juror who clarified that they were concerned for the safety of the parties, not their own personal safety. The clerk's minutes contain no indication that any party objected to or made further motion about the trial court's interaction with the juror or the apparent behavior that led to the juror's concerns.

Neither party offered jury instructions specifically related to the behavior of the witnesses while on the stand, but the trial court did instruct the jury about their duty to decide the case on the facts proved to them and on the law given to them, not sympathy, bias, prejudice, personal preference, or emotions.

---

[5]  There is no evidence in our record that Lamb was ever present on the Zoom platform during trial. At each day of trial, the clerk's minutes state, "Judy Lamb not present." CP at 286, 291, 297, 302, 307, 311, 320, 332, 339, 348, 359, 370, 374.

During deliberations, the trial court received a jury question asking whether the jury was supposed to include interest, attorney fees, and court costs in calculating the damages amount. After consulting with the parties, the trial court responded with "No." CP at 282. There is no evidence in our record that either party, Edsel or the Andersons, objected to this answer or requested that the trial court issue an instruction on the meaning of the word "interest."

On April 15, the jury returned a verdict in favor of the Andersons and Kitsap Mason Electrician in the amount of $19,162.

Based on the jury's verdict, the Andersons requested prejudgment interest at the rate of 10 percent per year. The Andersons contended it was reasonable to interpret the contract's interest rate provision to be 10 percent per year, calculated monthly, because a 10 percent interest rate each month would be "exorbitant." CP at 414.

VIII. EDSEL'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Over three weeks later, on May 9, Edsel filed a JNOV motion. Edsel argued that the contract's late payment fee was illegal, against public policy, unconscionable, and violated the Consumer Protection Act (CPA), chapter 19.86 RCW. Edsel further claimed that the Andersons' request to modify the interest rate in the contract to 10 percent per year, instead of 10 percent per month, was not supported by authority.

On May 16, 2022, the trial court apparently denied Edsel's JNOV motion and entered judgment in favor of the Andersons and Kitsap Mason Electrician. One of the trial court's factual findings adopted the Andersons' interpretation of the contract's interest provision, stating:

> The contract between the Andersons and Ernest Edsel provides for the award of prejudgment interest to the Andersons if they prevail in an action under the contract. At the contractual rate of 10 [percent] per annum calculated monthly beginning 60

days after the final bill on August 22, 2018, $6,680.10 is the amount of prejudgment interest at .83 [percent] monthly for 42 months.

CP at 473. Consequently, the Andersons' final judgment included prejudgment interest at 10 percent per year. The judgment was in the principal amount of $19,162 plus prejudgment interest, attorney fees, and costs. The judgment was silent as to Lamb.

IX. EDSEL'S NEW TRIAL MOTION

Nine days later, Edsel filed a motion for new trial and/or reconsideration. Edsel's motion raised five grounds for a new trial or reconsideration of the court's judgment decisions, four of which he did not raise in his JNOV motion. The four new grounds included allegations that Edsel was prejudiced by Kitsap Mason Electrician's failure to attend the arbitration and the trial court erred in its jury instructions.[6]

The trial court denied Edsel's motion for a new trial and/or reconsideration, concluding simply that the motion stated an insufficient basis for reconsideration under CR 59.

Edsel and Lamb appeal.

ANALYSIS

Edsel and Lamb individually appeal with different arguments. First, Lamb argues the trial court erred by improperly denying her disability requests for accommodations. Second, Edsel argues that the underlying contract was unenforceable for a number of reasons. Third, both Edsel and Lamb argue the trial court erred by entering an order that failed to properly address all parties

---

[6] With respect to jury instructions, Edsel argued the trial court erred by failing to instruct the jury regarding Joel Anderson's allegedly intimidating or threatening conduct on the witness stand, failing to instruct the jury of their duty to act disinterestedly about Joel's allegedly intimidating conduct and Lisa Anderson's crying on the witness stand, and failing to instruct the jury on the definition of "interest" after receiving a note from the jury.

and claims in violation of CR 54's requirements. Fourth, Edsel argues the trial court erred by failing to give certain jury instructions. Finally, in his reply brief, Edsel argues the trial court did not have subject matter jurisdiction over the disputes because the Andersons no longer own the underlying cause of action.

We reject each argument, beginning with the threshold question of subject matter jurisdiction.

I. SUBJECT MATTER JURISDICTION

In his reply brief, Edsel argues that the trial court lacked subject matter jurisdiction because the Andersons allegedly sold their interest in the lawsuit to a third party. We reject this argument.

A. LEGAL PRINCIPLES

A court has no power to act in the absence of subject matter jurisdiction. *Banowsky v. Guy Backstrom, DC*, 193 Wn.2d 724, 731, 445 P.3d 543 (2019). Superior courts possess few limitations on subject matter jurisdiction. *Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp.*, 181 Wn.2d 272, 276, 333 P.3d 380 (2014). Our constitution provides, "The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art IV, § 6. Subject matter jurisdiction may be raised at any time during a proceeding. *Pac. Marine Ins. Co. v. Dep't of Revenue*, 181 Wn. App. 730, 738, 329 P.3d 101 (2014).

B. APPLICATION

Edsel argues that the trial court lacked subject matter jurisdiction for two reasons. First, he contends that the trial court lacked subject matter jurisdiction because the Andersons no longer own their claims, and thus they do not have a legal interest in the case. Edsel relies on a declaration

from a Texas debt collector in which it is alleged that the debt collector is the owner of the claims, not the Andersons. Edsel claims that the Andersons failed to disclose this fact during trial.

Second, Edsel argues that the trial court lacked subject matter jurisdiction because Texas has exclusive subject matter jurisdiction of the case pursuant to a Texas statute that gives Texas exclusive jurisdiction over trusts.

Both arguments fail. Neither argument implicates subject matter jurisdiction. Subject matter jurisdiction is the authority of a court to hear and decide the type of controversy at issue. *Banowsky*, 193 Wn.2d at 731. "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something *other* than subject matter jurisdiction." *In re Estate of Reugh*, 10 Wn. App. 2d 20, 48, 447 P.3d 544 (2019) (emphasis added). Contract disputes, like this one, are clearly within the original jurisdiction of the superior courts. If there was a defect in the Andersons' ownership of their claims, the trial court certainly had the jurisdiction to make that determination. And if there is a future dispute over the enforceability of the Andersons' judgment, another superior court would certainly have jurisdiction to make that determination as well. Simply put, Edsel fails to demonstrate how the alleged ownership of a claim, even if the issue has merit, divested the trial court of its broad subject matter jurisdiction.

Edsel's second argument concerning the exclusive jurisdiction of the Texas trust statute is equally unconvincing.[7] Edsel cites no authority and provides no explanation of how the Texas trust statute deprived the trial court of subject matter jurisdiction in this state, particularly where

---

[7] Texas Property Code section 115.001 provides, in relevant part, "[A] district court has original and exclusive jurisdiction over all proceedings by or against a trustee and all proceedings concerning trusts. . . ."

the Andersons brought a breach of contract claim. RAP 10.3(a)(6) (an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); *Cook v. Brateng*, 158 Wn. App. 777, 794-95, 262 P.3d 1228 (2010) (court need not address arguments unsupported by relevant authority, references to the record, or meaningful analysis).

We reject Edsel's arguments related to the Andersons' ownership of the claims and the Texas trust statute; neither argument implicates subject matter jurisdiction for this case.

II. LAMB'S DISABILITY ACCOMMODATION CLAIM

We next turn to Lamb's arguments. Lamb first argues that the trial court erred in denying her two pretrial written requests for disability accommodations. We hold that no error occurred with Lamb's first request. We further hold that the trial court erred in its response to the second request, but that the error was harmless.

A. LEGAL PRINCIPLES

Addressing Lamb's arguments related to her requests for accommodations require reference to legal authorities related to several different topics.

1. Requests for Accommodation by Persons with Disabilities, General Rule (GR) 33

It is the policy of the Washington courts to provide meaningful access to justice and the judicial system. GR 33 (comment 1). Requests for disability accommodations are governed by GR 33, which prescribes the requirements for making such a request, including as follows:

> (5) *Content*. The request shall include a description of the accommodation sought, along with a statement of the disability necessitating the accommodation. The court may require the person requesting the accommodation to provide additional information about the qualifying disability to help assess the appropriate accommodation. . . .

The trial court is then required to consider the ADA and other similar laws to give primary consideration to the accommodation requested by the applicant and make its decision on an individual and case-specific basis. GR 33(c)(1). The trial court may deny an accommodation request for a handful of reasons, including the inability of the court to meet the request. GR 33(c)(2) provides, in relevant part, that denial of a request may only occur when:

> (B) the court is unable to provide the requested accommodation on the date of the proceeding and the proceeding cannot be continued without significant prejudice to a party; or
>
> . . . .
>
> (D) the requested accommodation would create an undue financial or administrative burden for the court; or would fundamentally alter the nature of the court service, program, or activity under (i) or (ii):
>
> (i) An accommodation may be denied based on a fundamental alteration or undue burden only after considering all resources available for the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion.

GR 33(d) also sets forth that if the trial court denies the request, it must inform the person requesting the accommodation that the request for accommodation has been denied. In addition, the trial court must explain the reasons for the denial and ensure the person requesting the accommodation is informed of their right to file an ADA complaint with the United States Department of Justice Civil Rights Division. GR 33(e).

2. Superior Court Arbitration Rules and Waiver of Right To Trial De Novo

The rules for superior court mandatory arbitration require that parties actively participate to preserve their right for appeal. SCCAR 5.4 states in relevant part:

> The arbitrator, for good cause shown, may allow an absent party an opportunity to appear at a subsequent hearing before making an award. *A party who fails to participate without good cause waives the right to a trial de novo.*

13

(Emphasis added.)

Similarly, SCCAR 7.1 provides that "[a]ny aggrieved party not having waived the right to appeal may request a trial de novo in the superior court."

B.  APPLICATION

Lamb argues that the trial court erred in denying her two written requests for accommodations, citing multiple reasons.  The Andersons claim that the trial court did not err in denying either request, but even if it did, Lamb was not prejudiced because she did not have standing as a party for the trial de novo.  We hold that no error occurred with Lamb's first request for Zoom access.  As for Lamb's second request, even if the trial court erred by failing to comply with GR 33 in responding, the error was harmless.

1.  Lamb's First Request for Accommodation

Lamb's first accommodation request was merely a request to have remote access to the trial.  Here, there was no error.  Zoom access was already available for the jury trial and the password was publicly available.  Because Lamb already had the ability to attend the trial remotely, she is entitled to no relief based on her first accommodation request.

2.  Lamb's Second Request for Accommodation

Lamb's second accommodation request, coming only 10 days after her first request and well into trial, was more extensive—she requested a machine that could speak for her.  On the same day of the request, the trial court responded, stating that it was a substantial expansion of the initial request.  And the trial court pointed out that based on the stated reason for the request—consequences from Lamb's surgery—Lamb would have been aware of the extent of her disability for several weeks, well before her first, more minimal, accommodation request.

Lamb was not a party by the time she made this second request on April 4, 2022. Four days before her request, on March 31, the trial court reiterated its in limine ruling that Lamb waived her right to a trial de novo and would not participate in the trial as a party.[8] Given the trial court's ruling that Lamb had waived her opportunity to participate, perhaps Lamb could have made an accommodation request as a witness or member of the public, but she had no standing to expect the level of accommodation necessary to participate as a party.[9]

Nevertheless, the trial court's response to Lamb's second request did not comply with GR 33. GR 33 provides a specific procedure that the trial court must follow in responding to and denying a disability accommodation claim. *See* GR 33(c)(1), (c)(2), (d), (e). Here, the trial court failed to closely follow this procedure. First, the trial court did not explicitly deny the request as required. *See* GR 33(d). Then, it failed to explain its consideration of the factors and failed to identify which permissible ground for denial that it was adopting in its ultimate decision. GR 33(c)(1), (c)(2), (e). Finally, the trial court did not, as required, ensure that Lamb was notified of her right to file an ADA complaint with the United States Department of Justice. GR 33(e).

But the trial court's error in failing to comply precisely with GR 33 was harmless. Lamb was already excluded from participation as a *party* by the trial court, and she has not shown any harm arising from her right to accommodation as a *witness* or a *member of the public*. Nothing in our record, through an offer of proof or otherwise, demonstrates that Lamb's testimony, if called as a witness, would have had any relevance to the case. And she still had the availability, like

---

[8] Notably, Lamb did not assign error to the trial court's in limine ruling.

[9] Neither party addresses the distinction, if any, between an accommodation request made by a party versus a request made by a witness or member of the public.

other members of the public, to Zoom access of the proceedings. Moreover, assuming the trial court had narrowly followed the letter of the rule, the timing of Lamb's second request would have been a viable basis to deny the request under GR 33(c)(2)(B). Thus, any error by the trial court in responding to Lamb's second request was harmless.[10]

3. Lamb's Waiver of Trial De Novo (Raised in Reply Brief)

Lamb objects to any conclusion that she waived her right to participate in the trial de novo by challenging, for the first time in her reply brief, the trial court's in limine ruling. Among her numerous arguments, she contends that the trial court's decision to prohibit her participation violated the statutory right of spouses to defend their interests in RCW 4.08.040. RCW 4.08.040 provides, in part,

> If the spouses or the domestic partners are sued together, either or both spouses or either or both domestic partners may defend, and if one spouse or one domestic partner neglects to defend, the other spouse or other domestic partner may defend for the nonacting spouse or nonacting domestic partner also.

---

[10] Lamb provides numerous additional arguments on why the denial of her requests for accommodations were wrongful, including that GR 33 (1) is invalid because of the United States Constitution's Supremacy Clause, (2) violates the ADA, (3) violates due process, (4) violates equal protection, and (5) violates the right to a jury trial. Independent of her GR 33 claims, Lamb also asserts that the trial court (1) violated the ADA, (2) wrongfully determined her requests fundamentally altered the nature of a civil trial, (3) improperly imposed "eligibility criteria," and (4) denied her due process, equal protection, and her right to a jury trial. Appellant Judy Lamb's Opening Br. at 16. But each of these arguments is only one sentence long with no meaningful analysis. Therefore, we do not consider them. RAP 10.3(a)(6); *Cook*, 158 Wn. App. at 794-95 (court is not required to entertain arguments that are unsupported by relevant authority, references to the record, or meaningful analysis).

Pointing to this language, Lamb suggests that Edsel should have been able to represent her by advocating for and defending her in the trial de novo.[11]

Lamb's arguments fail. No error was ever assigned to the trial court's in limine ruling. Although Edsel opposed the motion at the trial court by claiming he could represent Lamb as part of the marital community, neither Edsel nor Lamb assigned error to the trial court's decision in their opening briefs. Edsel also did not raise this issue or any of the other issues raised in Lamb's reply in his JNOV or new trial motions. We need not address arguments first raised in a reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

But even if Lamb's argument regarding RCW 4.08.040 is considered, it fails on the merits. By its plain language, the statute has nothing to do with permitting pro se representation of one spouse for another. The pro se exception to the practice of law is personal and nothing extends that personal right to one's spouse. *See No on I-502 v. Wash. NORML,* 193 Wn. App. 368, 372-73, 372 P.3d 160, *review denied*, 186 Wn.2d 1025 (2016). The exception only applies if the individual is acting solely on their behalf and acting with regard to their own legal obligations. *Id.*

---

[11] Beyond her statutory argument based on RCW 4.08.040, Lamb asserts many additional one-sentence arguments in her reply brief about the in limine ruling, including (1) the trial court's in limine ruling violated her rights to equal protection, (2) there is no trial court order or decision stating that she failed to appear at the arbitration, (3) the record shows that the trial court actually ordered a trial de novo for *both* Edsel and Lamb, (4) the trial court actually rejected the Andersons' claim that Lamb did not participate at the arbitration, (5) Lamb was unable to defend herself after the trial court erred in denying her disability request for an accommodation, (6) the trial court granted the Andersons' motion in limine to exclude Lamb and to prevent her from defending herself, and (7) the trial court compensated for Lamb's absence by not including her in its final judgments. But, here again, Lamb provides no analysis to support any of these arguments. Therefore, they need not be considered. *Cook*, 158 Wn. App. at 794-95.

at 373. We reject Lamb's argument that the trial court erred in preventing Edsel from representing her.

### III. CONTRACT'S INTEREST CLAUSE

Turning to Edsel's arguments, he contends the contract was unenforceable for several reasons. He first argues that the trial court erred in denying his JNOV motion when it revised the interest provision to impose prejudgment interest at 10 percent per year. He also argues the contract was unconscionable and a contract of adhesion. Finally, he argues that the interest provision was illegal because it violated the CPA and that the entire contract was void. We disagree.

#### A. LEGAL PRINCIPLES

##### 1. JNOV Standard of Review

When reviewing a motion for judgment notwithstanding the verdict,[12] we apply the same standard as the trial court. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021). The trial court will not grant such a motion unless, after viewing the evidence in favor of the nonmoving party, " 'there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party' " as a matter of law. *Budd v. Kaiser Gypsum Co.*, 21 Wn. App. 2d 56, 72-73, 505 P.3d 120 (internal quotation marks omitted) (quoting *Paetsch v. Spokane Dermatology Clinic, PS*, 182 Wn.2d 842, 848, 348 P.3d 389 (2015)), *review denied*, 199 Wn.2d

---

[12] With revisions to CR 50, motions for directed verdict and JNOV were technically renamed " 'motions for judgment as a matter of law,' " effective September 17, 1993. *Guijosa v. Wal-Mart Stores, Inc.,* 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting *Litho Color, Inc. v. Pac. Emps. Ins. Co.,* 98 Wn. App. 286, 298 n.1, 991 P.2d 638 (1999)). Still, because the parties refer to Edsel's post-verdict motion as a JNOV motion, we do as well.

1030 (2022). Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of its truth. *Johnson,* 197 Wn.2d at 611. We may affirm the trial court's disposition of a motion for judgment as a matter of law on any ground supported by the record. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753 n.9, 310 P.3d 1275 (2013).

2. Contract Interpretation

Contract interpretation is a question of law and is reviewed de novo. *Dave Johnson Ins. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). The primary purpose of contract interpretation is to determine the intent of the parties at the time of contract formation through the reasonable meaning of the contract language. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). Courts view the contract as a whole and give words their ordinary meaning. *Id.* at 713.

A contract is ambiguous if it is uncertain or is subject to two or more reasonable interpretations. *Id.* at 713. An interpretation of the contract that gives effect to all provisions is preferred to an interpretation that renders a provision ineffective. *Kiona Park Estates v. Dehls*, 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021). If a provision in the contract is subject to two possible constructions, one of which would make the contract unreasonable and the other of which would make it reasonable, courts adopt the reasonable interpretation. *Berg v. Hudesman*, 115 Wn.2d 657, 672, 801 P.2d 222 (1990).

B.  APPLICATION

1.  Trial Court's Interpretation of the Contract

Edsel argues the trial court erred when it denied his JNOV motion and revised the contract's interest provision to provide for 10 percent interest *per year*, rather than 10 percent *per month*.[13]  Edsel is incorrect.

The relevant language of the contract provides:

> *note if payment(s) are not met as outlined above a 10 [percent] intrest [sic] fee
> will be added monthly until full payment is received.

CP at 453.

Edsel contends that the plain language of the late fee provision shows that interest was to be imposed at 10 percent per month.  He challenges the trial court's decision to impose interest at 10 percent per year, claiming there was no authority to revise the late fee provision to something other than its illegal interest rate and that the trial court should have, instead, invalidated the contract.

But Edsel assumes the trial court *revised* the contract, instead of merely *interpreting* the contract.  From the record on appeal, a more accurate characterization of the trial court's decision is that it interpreted the provision to impose prejudgment interest at 10 percent per annum

---

[13] As a threshold matter, Edsel's JNOV motion may have been improper.  To preserve the opportunity to renew a CR 50 motion for judgment as a matter of law after the verdict, a party must also move for judgment as a matter of law *before* the trial court submits his or her case to the jury.  CR 50(a)(2); *Gorman v. Pierce County*, 176 Wn. App. 63, 86, 307 P.3d 795 (2013), *review denied*, 179 Wn.2d 1010 (2014).  Here, there is no evidence in our record that Edsel raised his motion for a judgment as a matter of law before the case was submitted to the jury.  Our record only shows Edsel filed a single motion for judgment as a matter of law more than three weeks after the jury reached its verdict.  Because neither party briefed the issue, we do not further address it.

*calculated monthly*. This interpretation of the contract is reasonable because it is consistent with the language of the provision and allows it to be enforceable within the statutory maximum.[14] *See Berg*, 115 Wn.2d at 672 (if a provision in the contract is subject to two possible constructions, one of which would make the contract unreasonable and the other of which would make it reasonable, courts adopt the reasonable interpretation); *Kiona Park Estates*, 18 Wn. App. 2d at 335. Consequently, the trial court did not err in enforcing the contract by interpreting the late fee provision as imposing interest, and relatedly imposing prejudgment interest,[15] in the amount of 10 percent per year.[16]

2. Unconscionability and Adhesion Contracts

In a related argument, Edsel argues that the contract is substantively and procedurally unconscionable and is a contract of adhesion. We disagree.

We review unconscionability as a question of law. *McKee v. AT & T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). Agreements may be unconscionable in two ways: substantively

---

[14] Edsel also argues that the trial court erred in applying the usury laws to cap or modify the contract's late fee provision because none of the elements of usury are present. However, Edsel does not point to any part of the record that suggests that the trial court cited to, or relied on, the usury laws for any part of the judgment. Thus, Edsel's usury argument fails.

[15] "[I]n determining the applicable prejudgment interest rate for breach of contract, the court look[s] first to the parties' contract: if the parties clearly provided an interest rate, that interest rate must be applied . . . ." 47 C.J.S. *Interest & Usury* § 86 (2014).

[16] Edsel also claims that the contract's late fee provision was an invalid penalty clause because at 10 percent per month, the Andersons would have collected over a hundred thousand dollars in late payments. But as discussed above, the trial court properly interpreted the contract to impose interest at the rate of 10 percent per year. Therefore, Edsel's invalid penalty argument fails.

and procedurally. *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013).

An agreement may be substantively unconscionable where it is one-sided or overly harsh. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 740, 349 P.3d 32, *review denied*, 184 Wn.2d 1004 (2015). In making this determination, we look at whether the provisions in question shock the conscience, are monstrously harsh, or are exceedingly callous. *Id.* The party attacking the contract has the burden to prove it is unconscionable. *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898, 28 P.3d 823 (2001), *review denied*, 145 Wn.2d 1027, *cert. denied*, 537 U.S. 954 (2002).

Procedural unconscionability is the lack of a meaningful choice given the surrounding circumstances of the transaction. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 814, 225 P.3d 213 (2009). Specifically, in evaluating whether there was a lack of meaningful choice, we consider several factors, including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print. *Id.* However, the key issue for finding procedural unconscionability is whether a party lacked a meaningful choice. *Id.* at 815.

Edsel argues that the contract is substantively unconscionable because the late payment fee was one-sided and overly harsh. But Edsel's entire argument is based on an incorrect interpretation of the contract. As discussed above, the trial court adopted the reasonable interpretation of the contract to impose prejudgment interest at 10 percent per annum calculated monthly. Because Edsel's substantive unconscionability argument rests entirely on an incorrect interpretation of the contract that was never enforced, his claim fails.

Edsel next claims that the contract is procedurally unconscionable because he lacked a meaningful choice in entering into the contract with the Andersons. He claims his declaration attached to his JNOV motion shows that many other contractors refused his request for the remodel and he urgently and desperately needed it to provide onsite housing for a full-time caregiver for Lamb. Edsel's argument is unconvincing for at least two reasons.

First, Edsel's claim that he entered into the contract out of urgency or desperation is belied by the absence of any evidence of him raising the matter before or during trial (as opposed to his post-verdict motion). Edsel provides no citations to the record to support his assertion that these issues were developed during trial. We do not consider unsupported claims. RAP 10.3(a)(6); *Cook*, 158 Wn. App. at 794-95 (court is not required to entertain arguments that are unsupported by relevant authority, references to the record, or meaningful analysis).

Second, especially considering his legal education, Edsel provides no persuasive evidence that he did not understand the terms of the contract, and he has not shown that any important terms were hidden in a maze of fine print. *Satomi Owners Ass'n*, 167 Wn.2d at 814. Therefore, Edsel has failed to meet his burden of showing that the contract was procedurally unconscionable.

Likewise, Edsel's argument that this was an adhesion contract has no merit. A contract may be an adhesion contract if (1) it is a standard form printed contract, (2) the contract is " 'prepared by one party and submitted to the other on a "take it or leave it" basis,' " and (3) there was " 'no true equality of bargaining power between the parties.' " *Zuver v. Airtouch Commc's, Inc.*, 153 Wn.2d 293, 304, 103 P.3d 753 (2004) (internal quotation marks omitted) (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima,* 122 Wn.2d 371, 393, 858 P.2d 245 (1993)). Edsel fails to discuss, much less show, each element of an adhesion contract—namely,

that the contract was a standard form printed contract, it was provided on a take it or leave it basis, and there was an inequality of bargaining power. Therefore, Edsel's adhesion claim fails.

3. Illegality of the Interest Provision

Finally, Edsel raised, in his post-verdict JNOV motion, the alleged illegality of the contract's late payment interest provision as a defense, claiming that because the interest provision was excessive, the entire contract should not be enforced. But, as discussed above, the trial court reasonably determined the provision imposed interest at 10 percent per year, not 10 percent per month.[17] Therefore, Edsel's illegality argument fails.[18]

In summary, Edsel's arguments about the trial court's denial of his JNOV motion and enforceability of the contract all fail. The trial court did not err when it interpreted the interest provision of the contract to impose interest at 10 percent per year and, accordingly, the contract was not substantively unconscionable. Further, Edsel has not shown the contract was either procedurally unconscionable or a contract of adhesion. Finally, Edsel's claim that the entire

---

[17] Similarly, Edsel asserts that the contract's interest provision violates public policy. "Contracts 'are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy or they manifestly tend to injure the public in some way.' " *Yaron v. Conley*, 17 Wn. App. 2d 815, 829, 488 P.3d 855 (2021) (quoting *Motor Contract Co. v. Van Der Volgen*, 162 Wn. 449, 454, 298 P. 705 (1931)). But when the contract and its interest provision are appropriately interpreted, Edsel cannot show that the contract is clearly contrary to public policy or that the contract injures the public.

[18] Edsel mentions the CPA in the context of his illegality argument. To the extent Edsel is alleging a stand-alone claim or defense based on the CPA, he never previously raised it as a defense in his answer. Thus, it would be waived. *See Gunn v. Riely*, 185 Wn. App. 517, 528-29, 344 P.3d 1225 (affirmative defenses must be timely pleaded or they are waived), *review denied*, 83 Wn.2d 1004 (2015); *Vedder v. Spellman*, 78 Wn.2d 834, 837, 480 P.2d 207 (1971) (noncompliance with statute is a form of illegality).

contract is void because the interest provision is illegal fails. Accordingly, we hold the trial court committed no error when it denied Edsel's JNOV motion.

## IV. CR 54(b) AND THE TRIAL COURT'S FINAL JUDGMENT

Both Edsel and Lamb argue that the trial court abused its discretion by failing to grant Edsel's motion for a new trial on the basis of CR 54(b), the rule governing judgments when some claims or parties remain in a lawsuit. They point to the trial court's judgment, which only pertained to Edsel and failed to make any determinations as to Lamb. And because the trial court failed to follow CR 54(b)'s requirements for judgments that do not address all parties, the trial court erred. We disagree.

### A. LEGAL PRINCIPLES

A trial court generally must resolve all claims for and against all parties before it enters a final judgment on any part of the case. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now*, 119 Wn. App. 665, 693, 82 P.3d 1199, *review denied*, 152 Wn.2d 1023 (2004). In a case with multiple parties or multiple claims, a party is allowed to appeal from a final judgment as to fewer than all the parties or claims in the action but only if the final order contains "an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment." CR 54(b); *Fluor Enters., Inc. v. Walter Constr., Ltd*., 141 Wn. App. 761, 766-67, 172 P.3d 368 (2007).

We review a denial of a motion for a new trial or reconsideration for an abuse of discretion. *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010).

B. APPLICATION

Both Edsel and Lamb argue that the trial court's final judgment that failed to address Lamb violated CR 54(b) and, therefore, this court must enter a judgment in favor of Lamb. Relatedly, Lamb argues that the Andersons failed to try their claims against her and to seek a final judgment against her. Consequently, she contends that finality, issue preclusion, and waiver require that this court enter a judgment in favor of Lamb. Edsel's and Lamb's claims are unpersuasive.

Lamb was no longer a party by the time the judgment was entered; she had waived her right to a trial de novo. Because Lamb was no longer in the case, CR 54(b) did not apply. For the same reason, the Andersons were not required to try their claims or seek a final judgment against her. Therefore, the trial court did not err in the form of its judgment against Edsel and did not abuse its discretion in denying Edsel's motion for a new trial on this basis.

V. FAILURE TO GIVE JURY INSTRUCTIONS

Edsel also argues that the trial court erred in denying his motion for a new trial because the trial court failed to provide certain jury instructions related to the aggressive and emotional demeanor of witnesses and a jury question concerning calculating interest on the judgment amount. We disagree.

A. LEGAL PRINCIPLES

Jury instructions are reviewed de novo if based on a matter of law. *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 767, 389 P.3d 517 (2017). However, when the trial court's decision is based on a factual determination, we review the trial court's decision for an abuse of discretion. *Id.* If the trial court fails to give a proposed instruction, the party offering the instruction must object to the trial court's failure to do so. CR 51(f); *Barnett v. Sequim Valley Ranch, LLC*,

26

174 Wn. App. 475, 490, 302 P.3d 500, *review denied*, 178 Wn.2d 1014 (2013). A party that fails to object waives the issue on appeal. *Barnett,* 174 Wn. App. at 490-491. Moreover, a party that does not propose an instruction cannot later complain about the trial court's failure to give the instruction. *Goodman v. Boeing Co.,* 75 Wn. App. 60, 75, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995).

### B. APPLICATION

Edsel argues that the trial court failed to instruct the jury properly in three instances. First, he claims that the trial court was required to instruct the jury about their duty of impartiality after a juror raised concerns arising from Joel Anderson's conduct on the witness stand. Second, Edsel claims that the trial court failed to instruct the jury about its duty of impartiality when Lisa Anderson cried on the witness stand. Third, Edsel argues that the trial court failed to instruct on the definition of "interest" after receiving a note from the jury asking about interest.

Each of Edsel's claims is without merit.[19]

Edsel waived any objections he may have had to any jury instructions. The clerk's minutes do not show that Edsel made any objection to the trial court's alleged failure to instruct the jury in any of the three instances he identifies.[20] He also did not propose an instruction for the trial court

---

[19] Edsel also claims in passing that the court erroneously entered a judgment for Kitsap Mason Electrician because the company did not attend the February 2020 arbitration hearing. But Edsel does not provide any evidence from the record that demonstrates that Kitsap Mason Electrician did not attend the February 2020 arbitration hearing to support his assertion. Thus, we do not address this issue. RAP 10.3(a)(6); *Cook*, 158 Wn. App. at 794-95.

[20] Moreover, the jury instructions clearly show that the trial court instructed the jury about their duty to decide the case on the facts proved to them and on the law given to them, not sympathy, bias, prejudice, personal preference, or emotions.

to give to the jury. The first time that these issues were raised by Edsel were in his motion for a new trial. Edsel's failure to object and propose relevant instructions waived the issue. CR 51(f); *Barnett*, 174 Wn. App. at 490-491 (counsel must object to failure to give instruction); *Goodman*, 75 Wn. App. at 75 (failure to propose instruction means party cannot later complain about trial court's failure to give instruction). Therefore, the trial court did not abuse its discretion in denying Edsel's motion for a new trial based on the alleged failures to properly instruct the jury.[21]

## VI. ATTORNEY FEES

The Andersons request attorney fees on appeal pursuant to RAP 18.1 and costs pursuant to RAP 14.2. We grant the Andersons' request for attorney fees and costs.[22]

RAP 18.1 provides a party the "right to recover reasonable attorney fees or expenses on review" provided that the party requests the fees in its opening brief and "applicable law" grants the right to recover. RAP 18.1(a), (b). "We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.' " *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020) (quoting *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). RAP 14.2 provides for an award of costs to the party that substantially prevails on review.

---

[21] Edsel also argues that he was entitled to a hearing on his new trial motion so that the trial court could "listen to whatever portion of the audio recording exists" of the Andersons demeanor at trial. Opening Br. of Ernest Edsel, Appellant at 45. However, Edsel cites no authority that a trial court is required to allow oral argument in the event of a CR 59 motion. *Cook*, 158 Wn. App. at 794-95 (court need not address arguments unsupported by relevant authority, references to the record, or meaningful analysis).

[22] Edsel assigns error to the trial court's award of attorney fees to the Andersons and Kitsap Mason Electrician in passing. We do not consider these claims because Edsel does not provide any meaningful analysis of any potential error. *Cook*, 158 Wn. App. at 794-95.

No. 570742-II

Because the contract between the parties provided for attorney fees and the Andersons substantially prevail on appeal, we grant the Andersons' request for attorney fees and costs on appeal.

CONCLUSION

We affirm the trial court and grant attorney fees and costs to the Andersons.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

VELJACIC, J.

29